1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name  BARNETT, DENNIS       RAY         **FILED**

       (Last)       (First)      (Initial)     MAR 2 4 2008

3
   Prisoner Number  C-77539

4                                                RICHARD W. WIEKING
                                                 CLERK, U.S. DISTRICT COURT
   Institutional Address  P.O. BOX 2500, CALIFORNIA MEDICAL FACILITY
                          NORTHERN DISTRICT OF CALIFORNIA

5  VACAVILLE, CA 95696-2500

6

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8  BARNETT, DENNIS RAY       CV   08      1604
   (Enter the full name of plaintiff in this action.)

9                                        )
                                         )   Case No. _____
10      vs.                              )   (To be provided by the clerk of court)
                                         )
11  KNOWLES, WARDEN; CALIFORNIA          )          RMW
                                         )
    DEPARTMENT OF CORRECTIONS AND        )   PETITION FOR A WRIT
12                                       )   OF HABEAS CORPUS
    REHABILITATION; CALIFORNIA MEDICAL   )
13                                       )          **(PR)**
    FACILITY; AT SOLANO COUNTY           )
14  (Enter the full name of respondent(s) or jailor in this action)  )

15

16  _Read Comments Carefully Before Filling In_

17  _When and Where to File_

18      You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23      If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS       - 1 -

1   Who to Name as Respondent

2          You must name the person in whose actual custody you are.  This usually means the Warden or

3   jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4   you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5   respondents.

6          If you are not presently in custody pursuant to the state judgment against which you seek relief

7   but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8   custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9   was entered.

10  A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11        1.  What sentence are you challenging in this petition?

12             (a)    Name and location of court that imposed sentence (for example; Alameda

13                    County Superior Court, Oakland):

14        SUPERIOR COURT OF SANTA CARA  190 W. HEDDING street, SAN JOSE, CA

15                    Court                                    Location

16             (b)    Case number, if known  199321

17             (c)    Date and terms of sentence  OCTOBER 12, 2000  45 years to LIFE

18             (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                    parole or probation, etc.)              Yes  X      No _____

20                    Where?

21                    Name of Institution:  CALIFORNIA MEDICAL FACILITY (CMF)

22                    Address:  P.O. BOX 2500,  P-112-LOWER, VACAVILLE, CA 95696-2500

23        2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Penal Code sect. 245(a)(1) Assault with a deadly weapon, second

27  degree Robbery on Penal code sect. 211 AND 212.5,(C), Pen. code

28  sect. 12022 (b)(1) with a personally using a deadly and dangerous weapon

    Pen. code sect. 667(b)(i) + 1192.7 + 1170.12) Seven prior convictions

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

    Arraignment:                    Yes ✔     No _____

    Preliminary Hearing:         Yes ✔     No _____

    Motion to Suppress:         Yes ✔     No _____

4. How did you plead?

    Guilty _____    Not Guilty ✗    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _____    Judge alone _____    Judge alone on a transcript ✗

6. Did you testify at your trial?         Yes ✗     No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment              Yes ✗     No _____

    (b)    Preliminary hearing     Yes ✗     No _____

    (c)    Time of plea             Yes ✗     No _____

    (d)    Trial                    Yes ✗     No _____

    (e)    Sentencing              Yes ✗     No _____

    (f)    Appeal                  Yes ✗     No _____

    (g)    Other post-conviction proceeding    Yes ✗     No _____

8. Did you appeal your conviction?         Yes ✗     No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal             Yes ✗     No _____

        Year: Dece 6,2008    Result: AFFIRMED

        Supreme Court of California    Yes ✗     No _____

        Year: Feb 11,2003    Result: Denied Dock No. S112740

        Any other court             Yes _____    No ✗

        Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1          petition?                     Yes X    No____

2      (c)    Was there an opinion?        Yes X    No____

3      (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                     Yes ____    No X

5          If you did, give the name of the court and the result:

6         _____

7         _____

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?      Yes X    No X

10      [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition.  You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15  U.S.C. §§ 2244(b).]

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17               questions for each proceeding.  Attach extra paper if you need more space.

18      I.    Name of Court: *SUPERIOR COURT OF SANTA CLARA COUNTY*

19          Type of Proceeding: *Petition For Writ OF Habeas Corpus*

20                       *CASE No. 199321*
            Grounds raised (Be brief but specific):

21         a. *Ineffective assistance OF Trial Counsel right*

22         b. *to Separate JURY Trial on my priors, AND ENHANCEMENT*

23         c. *Counsel Failure to turn over Files and OF Pleas. Failure to*

24         d. *Present evidence. See Attach Extra PAPER*

25      Result: *Denied*             Date of Result: *APR 11, 2006*

26      II.    Name of Court: *COURT OF APPEAL FOR SIXTH APPELLATE DISTRICT*

27          Type of Proceeding: *Petition FOR Writ OF Habeas, CORPUS*

28                     *CASE No. H030334*
            Grounds raised (Be brief but specific):

1    a. *INEFFECTIVE assistance OF TRIAL counsels Advise petitioner*

2    b. *of the Right to separate JURY TRIAL on my PRIORS) and*

3    c. *ENHANCEMENT, counsel Failure to Turn over FILE and plea*

4    d. *See ATTACH EXTRA paper on section I, II, III*

5    Result: **Denied** _____ Date of Result: **JULY 18, 2006**

6    III.   Name of Court: **STATE SUPREME COURT**

7    Type of Proceeding: **Petition FOR Writ OF Habeas corpus**

8    Grounds raised (Be brief but specific): **DOCK No. S146804**

9    a. *INEFFECTIVE assistance OF TRIAL counsels Advise petitioner of the*

10    b. *Right to separate JURY TRIAL on my priors, and ENHANCEMENT, counsel*

11    c. *Failure to Turn over File and plea, see Attach Extra paper on*

12    d. *Section I, II, III CASE No. S146804*

13    Result: **Denied** _____ Date of Result: **April 11, 2007**

14    IV.   Name of Court: _____

15    Type of Proceeding: _____

16    Grounds raised (Be brief but specific):

17    a. _____

18    b. _____

19    c. _____

20    d. _____

21    Result: _____ Date of Result: _____

22    (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23          Yes _____   No **X**

24    Name and location of court: _____

25 **B. GROUNDS FOR RELIEF**

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

need more space.  Answer the same questions for each claim.

[Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: INEFFECTIVE COUNSEL

see Attach Extra Paper

Supporting Facts: Petitioner contends in the present petition, that I was denied effective assistance, of trial counsel, based on several grounds. Counsel failed to advise petitioner, of his right to a seperate jury trial, ON PRIOR CONVICTIONS and enhancements.

Claim Two: Counsel failed to object to prejudicial evidence. See Attach extra paper

Supporting Facts: On old contracts, that I took deals for, it was not brought to my attention, it would be used for three strikes.

Claim Three: Counsel failed to investigate victums backround.

see Attach Extra Paper

Supporting Facts: Victum had a criminal record and it was not brought up, for credita-bility, At trial or at penalty phase

see Attach Extra Paper

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

During the penalty phase, the fact that I was mentally retardation, was not brought up. During penalty phase under case Canterman-Petns-Shn counsel was Ineffective assistance of counsel or competent at penalty phase none capital case

section (d) If you sought relief in any proceding other than an appeal, Answer the following questions for each proceding. I III II E) AND B GROUNDS FOR RELIEF CLAIM ONE'S AND TWO, AND THREE, AND ALSO SUPPORTING FACTS:

1
2  UNDER UNITED STATES V. BOOKER, 543 U.S. 160 L. Fd 2d 621, 125 S. Ct. 738,
3  (2005) and also see Manning V. Foster, 224 F. 3d 1129 (9th Cir. 2000)
4  Foster V. Delo, (8th Cir. 1995) 54 F. 3d 463; AND Dennis La Crosse V.
5  UNITED STATES COURT OF APPEAL FOR NINTH CIRCUIT; 244 F. 3d 702,
6  2001 U.S. APP. LEXIS 4585; people V. pope, (1979) 23 C. 3d 412, 425-26, 152
7  C. R. 732, 590; people V. IBARRA, (1963) 60 C. 2d 460, 34 C. R. 863, 386;
8  RULE OF PROFESSIONAL CONDUCT (RULE 7-103), EVIDENCE CODE 1103 (a)(1)
9  and TILLMAN V. COOK, 215 F. 3d 116 (10th Cir. 2000); Strickland V.
10 Washington, 466 U.S. 668, 80, L. Ed. 2d 674, 104 S. Ct. 2052 (1984) an
11 UNITED STATES V. CRONIC, (1984); 104 S. Ct. 2039; INEFFECTIVE
12 ASSISTANCE OF COUNSEL my Trial counsel Failure to advise
13 APPELLANT of his right to have a separate Jury Trial on my Prior
14 S CONVICTION'S and ENHANCEMENT object to more to strike hearsay
15 testimony and my Trial Judge Failure to advise APPELLANT OF his
16 Right to have a separate Jury Trial on my Priors Convictions;
17 ENHANCEMENT as STRIKES to REVIEW MAY 16, 2000, Reporter's
18 TRANSCRIPT From the Judgment OF The Superior Court, BEFORE the
19 HONORABLE C. RANDALL SCHNEIDER, JUDGE., WAIVER OF JURY TRIAL
20 TUESDAY, MAY 16, 2000, 9:00 O'CLOCK A.M. Appellant
21 WAS DENIED his right, to a "seperate
22 Jury trial", on a "prior conviction
23 and Enhancement" under this case,
24 citing where, United States, V. Booker
25 543 US-160 L Fd 2d 621, 125 S.ct. 738
26 (2005) Appellant was denied his
27 Rights, to a seperate jury trial,
28 in violation of Article III, 2,

1

Case No. 000-00-00000-00 Filed 05/27/2004 Page 8 of 100

1
2  CLAUSE 3, of the United States Con-
3  stitution and the sixth Amendment,
4  to the United States Constitution
5  and the sixth Amendment, to the
6  United States constitution. Plus, beond
7  A REASONABLE double Standard,
8  Article III, section 2, clause 3, of
9  the United States Constotution pro-
10  vides, "The trial of all crimes,
11  except in case of impeachment,
12  shall be by jury, Under the
13  sixth amendment rights." On this
14  issue, I have a REPORTER's transcript
15  of proceedings, WAIVER of Jury
16  Trial, May 16th 2000, 9:00 A.M.
17  This will be an Exhibit -D
18  to the. _____. They refus-
19  ed to give me, a seperate jury
20  trial, on my prior conviction and
21  Enhancement. This violates my
22  rights, to due process. One
23  violation is, my attorney failed,
24  to send me, my full case file!
25  In order to varify my prior
26  strikes, a review of all affected
27  CASE FILES, must be givin to me.
28  They were NOT! ALL court trans-

Case 5:08-cv-01304-JW Document 1 Filed 03/24/2008 Page 9 of 30

section (a) If you sought relief in any proceeding other than an appeals, Answer the following questions for each proceeding I, II, III, IV, and B. Grounds for relief, claim one and two, and three. And also supporting facts: I must present all my claims in my first federal Habeas Petition claim one and claim two, and claim three

-cripts and plea aggrements, were not sent to me. Without review of important materils, I could not make and because of missing files my attorney led me to believe, that these offences would not effect me in the future! Ineffective assistance of counsel, Strickland V. Washington, (1984) 104 S. Ct. 2052 And see also, United States V. Cronic (1984) 104 S. Ct. 2039, the rest of claim of my complant, or my petition for writ of Habeas Corpus, read or review. The petition for writ of Habeas Corpus, Also see attached exhibit, A thue A-21 and that is the end of my claims.

The Court of Appeals, denied my petition, and my C.D.C. number was incorrect. The mail was delayed, getting to me, because of that. I didn't recieve it centill, That will be exhibit C. C.R.C. rule number 29(a)(29(b). The court of Appeals denied my petition for a writ of Habeas Corpus,

3

Case 3:08-cv-01054-BMV-...-Document... Filed 02/24/2008 Page 10 of 30

1  
2 with out giving me a reason, see  
3 Rule 260 2001 Amended, Relett-  
4 ered and Renumbered, Rule  
5 4,500 and Jan. 1, 2002, Rule 28(a), 29(a)  
6 Rompilla v. Beard, 545, U.S. 374, 125 S. Ct. 2456, 162, L.Ed. 2d 360 (2005)  
7 My Trial Counsel Violate my Eighth Amendment that people  
8 have a Right to be Free From Punishments that are  
9 cruel and unusual. See Hill v. Beyer, 262 F. 3d 474, 482-83 (3d  
10 cir. 1995) (waiver not knowing and intelligent when defendant did  
11 not understand rights, defense counsel did not remember whether  
12 he told defendant about right to Jury Trial and U.S. v. Robinson, 8  
13 F. 3d 418, 423-24 (7th cir. 1993); U.S. v. Reyes, 603 F.2d 69, 71-72 (9th  
14 cir. 1979), Despite Rule 23(b) (reversible error where trial court Failed  
15 to question defendant regarding waiver and "defendant's expression of  
16 consent on the record [I did not] appear at the time the [waiver was] made"  
17 My Trial Counsel and Trial Judge They REFUSED to give APPELLANT  
18 SEPERATE JURY TRIAL, on my prior convictions and ENHANCEMENTS  
19 they did not advise me I can have a SEPERATE JURY TRIAL, on my prior  
20 convictions and ENHANCEMENTS, They REFUSED OR denied to Advise  
21 me to do so. This violates my rights to due process and Eighth  
22 Amendment Rights, I want to HAVE A SEPERATE JURY TRIAL, on my  
23 PRIOR convictions and ENHANCEMENTS under case citing here UNITED  
24 States V. Booker 543 U.S. 160 L.Ed 2d 621, 125 S. Ct. 738 (2005)  
25 I went to the LAW LIBRARY on September 02, 2006 The LAW  
26 LIBRARY FREE STAFF Ms. Paulis said I have to make THREE copys  
27 OF MY Petition I told her this is going to the STATE SUPREME COURT  
28 she still said THREE COPY ONLY and she also say IF the court  

4

Case 3:08-cv-... Document ... Filed 03/24/2008 Page 11 of ...

Section (a) IF you sought relief in any proceeding other than an appeal, answer the following questions FOR EACH PROCEEDING) I, II, III) IV, AND B: GROUNDS FOR RELIEF CLAIM ONE) TWO) THREE, AND also SUPPORTING FACTS)

1.

2. CALL CALIFORNIA MEDICAL FACILITY at the PRISON of the INSTITUTIONAL

3. LAW LIBRARY MS. PAULS FREE STAFF that the SUPREME COURT NEED

4. more copies to CALL her, that the SUPREME COURT IS ORDERING

5. the more copies ON BEHALF OF APPELLANT Mr. D. BARNETT.

6. The APPELLANT going WRITE a 602 APPEAL FORM on the PRISON LAW

7. LIBRARY REFUSING AND Denied the APPELLANT to MAKE copies

8. for the SUPREME COURT Rules, the CALIFORNIA RULES OF COURTS

9. Rules. Please I am Deeply Sorry about the copies to the COURTS

10. Please I am Deeply appreciate your COURT OF PANEL JUSTICE and

11. your COURT CLERK Please forgive about the copies see CASES Citings

12. here Keenan v. Hall, 83 F.3d 1083, 1093-94 (9th Cir. 1996) (NO constitution

13. al violation when inmate failed to show prejudice resulting from allege

14. dly slow photocopying and notary service provided by prison law library

15. with Gentry v. Duckworth, 65 F.3d 555, 559 (7th Cir. 1995) See case

16. Citings compare Simmons v. Dickhaut, 804 F.2d 182,184 (1st Cir. 1986)

17. An inmate may also state a claim for denial of right of access to

18. courts by alleging misconduct by prison officials, (per curiam)

19. (claim stated when prisoner alleged that prison officials ignored multiple

20. requests. IF the SUPREME COURT JUSTICES PANEL HONORABLE JUSTICE

21. ) IF YOU Decide to Denied APPELLANT FOR REVIEW THANK YOU JUSTICE

22. CALIFORNIA Penal code sect. 667(a)(1), Which was the law in effect

23. at the time of petitioner's conviction, provides that a person being

24. sentenced for certain serious felonies receives a five years

25. sentence enhancement "for each such prior conviction & of certain

26. serious felonies] on charges brought and tried separately." (emphasis

27. added.) "Brought and tried separately" means that" the underlying

28. proceeding must have been formally distinct, from filing to adjudicated

5

Section (d) If you sought Relief in any Proceeding other than an appeal Answer the

1  Following Questions for Each Proceeding I, IE, III, IV; AND B. GROUNDS FOR RELIEF

2  CLAIM ONE, AND TWO, THREE AND ALSO SUPPORTING FACTS!

3  jon of guilt In re Harris, 775 P. 2d 1057, 1060. (Cal. 1989), and also see

4  Daily Appellate Report 5033 Davis v. Jeannie Woodford, Director, California

5  Department of Corrections on April 28, 2006 to have a Separately or

6  separate jury Trial on the Appellant, pRior convictions and Enhancements

7  under case citings D.A.R. 5033 Davis v. Jennie Woodford, Director,

8  CALIFORNIA Department OF CORRECTIONS April 28, 2006 and see UNITED

9  STATES V. BOOKER 546 U.S. 160 L.Ed. 2d 621, 125 S.Ct. 738 (2005) see

10 also the defendant counsel Failure to investigate defendant, or prepare

11 A motion, because defendant have ineffective counsel and competent

12 effective Assistance of Counsel. (2) Ineffective Assistance, counsel performed

13 deficiently, at penalty phase of NONE CAPITAL Trial, BY FAILING

14 to adequately Investigate or prepare; the defendant was develop-

15 mentally disabled; established under the Lanterman development

16 disabilities services Act, penal code 1001.20 (A) as Amended in 2008

17 Additionally APPLies the program's AvaiLABiLITY to person with

18 Cognitive developmental disabilities, which permits person with

19 Autism, or similar conditions related to mental Retardation or Autism,

20 or people requiring treatment similar to that required for mental

21 Retardation or Autism, to Enter the diversion program. penal Code

22 1001.21 (A) (b) and also Pen-code 1001.20 (A)(b)(C), AND Pen. code

23 1001.23 (A)(b) and 1001.34 Welf AND INST. Code 6000.5 AND

24 4512, subd (A). penal code section 4011.6, or 8. LANTERMAN-

25 PETRIS-SHORT people V. ANDRADE 79, Cal. App. 4th 651, 94 2d

26 314 (2000) AND ALSO MAYFIELD V. WOODFORD 270 F. 3d 915 (9th

27 Cir. 2001) AND see ALSO MURTISHAW V. WOODFORD 255 F. 3d 926,

28 (9th Cir. 2001) see Attached sheet extra PAPER

6

1  section (a) If you sought relief in any proceeding other than an appeal answer the follow
2  ing questions for each proceeding I, II, III, IV; AND B. GROUNDS FOR RELIEF CLAIM
3  ONE, AND TWO, AND THREE. AND ALSO SUPPORTING FACTS:
4  max before it resulted in an unfair trial i.e. a MISCARRIAGE OF
5  Justice. under Lutermah-Petr's-Short and also see People V. Andrade,
6  79, Cal. App. 4th 651. 94 Cal. Rptr. 2d 312 (2000) and also see mayfield V.
7  Woodford 270 F. 3d 95 (9th Cir. 2001) see also murtishaw V. woodford
8  255 F. 3d 926 (9th Cir. 2001). see also  Requests For accommodation By
9  person with disabilities (4) (2) ADA COORDINATOR; also: mclann V. Jones,
10  32 U.S.F.L. Rev. 75 (1997) also see RAFFERTY V. Cranston public school
11  committee, 315 F. 3d 21, 2002) under state Education department, under
12  the Individuals with Disabilities Education Act 3 601, 615 (d), (9),
13  (FDEA) AND the Rehabilitation Act. 201 F. supp. 2d 222, Richardson V.
14  Hillman, (S.D.N.Y.) 2002, Civil Rights of Institutionalized person Act
15  37. (a), 42 U.S.C.A. 3 1997e (a). Due to this delay Barnett been havpart-
16  Problem having INMATES TO ASSISTANCE him IN writing this writing
17  this writ For him. I am ASSISTANCE BARNETT the Appellant to write
18  this petition AND I am not a Lawyer or Attorney AND INMATE Said
19  he is not a Lawyer or Attorney to. he Don't know about the Laws...
20  on case citing here  187 F. 3d 1104, miles V. Prunty, (C.A.9 (Cal.) 1999)
21  Court of APPEALS reviews de novo a district courts decision to dismiss a
22  petition For writ of Habeas corpus, including a dismissal on statute of limitations
23  grounds. 28 U.S.C.A. 2254 (a), Findings of Fact made by the district court in
24  Habeas corpus proceeding are reviewed For clear error. 28 U.S.C.A. 2254 (e).
25  one-year limitations period For Federal habeas corpus petition was equitably tolled,
26  where inmate's state appellate counsel informed him of deadline Just 22
27  days before end of limitation period and inmate submitted petition to prison
28  authorities within 17 days, relying on them to draw on his trust account and prepare a

7

1. section (a) IF you sought relief in any proceeding other than an appeal, Answer the
2. following question for each proceeding I, II, III, IV; AND B. GROUNDS For relief
3. CLAIM ONE, AND TWO, AND THREE, AND also SUPPORTING FACTS!
4. Check for the filing fee, as well as to mail check and petition to district
5. court. 28 U.S.C.A. 2254(a). the limitations period for habeas corpus petition
6. as imposed by the Antiterrorism and Effective Death penalty Act (AEDPA)
7. only if extraordinary circumstance beyond a prisoner's control make it impossible
8. to file a petition on time. 28 U.S.C.A. 2254(a). Willie Lee Miles ("Miles")
9. appeals the district court's dismissal of his 28 U.S.C. 2254(a) habeas corpus
10. petition as untimely. Miles raises two issues on appeal, only one of which we reach.
11. Miles contends his petition was timely filed under the prison MAILBOX Rule,
12. and in the alternative, that extraordinary circumstance existed sufficient to
13. equitably toll the applicable statute of limitations. We have Jurisdiction
14. pursuant to 28 U.S.C 1291 and 2253 and we reverse. REVERSED AND
15. REMANDED. Although equitable tolling is unavailable in most cases see
16. Calderon (Beeler), 128 F. 3d at 1288, we find the doctrine applicable here.
17. Accordingly, the district court's order dismissing Miles' petition as untimely
18. is reversed and the case remanded for proceedings consistent with this
19. decision. MR. BARNETT case is a same as this case citings here
20. 187 F. 3d 1104, miles v. prunty, (C.A.9 (cal.) 1999) and also Burns v.
21. Morton, 134 F. 3d 109, 113 (3d Cir. 1998) (Same.) Hoggro v. Boone, 150 F.
22. 3d 1223, 1226 n-3 (10th Cir. 1998) see also Peterson v. Demskie, 107 F. 3d
23. 92, 93 (2d Cir. 1997) (implying that a 2254 petition would be
24. considered filed when handed to PRISON AUTHORITIES FOR MAILING).
25. INMATE BARNETT is a same ISSUES above here to get the
26. PRISON AUTHORITIES to DRAW on his TRUST ACCOUNT and prepare
27. CHECK for the filing fee, as well as to MAIL check and petition to
28. District court. 28 U.S.C.A. 2254(a)..

1  Section (a) IF you sought relief in any proceding other than an Appeal, Answer the
2  following Questions for EACH PRoceeding I, II, III, IV, AND B-GROUNDS FOR
3  Relief CLAIM ONE, TWO, THREE. AND also SUPPORTING FACTS)

4  AND also see Washington V. Punsalan, 156 Wash. 2d 875, 133
5  P.3d 934 (Wash. 2006). The Washington STATE SUPREME court
6  has ruled that CrR 3.1(F) entitles Indigent Criminal defendants
7  to expert Services at Public Expense, even if they're represent
8  ed by Private COUNSEL., Robin Punsalan and Chayce Arden Hanson were
9  prosecuted in the King county superior court in seattle, washington —
10  Punsalan for Robbery and Hanson for manslaughter, both were Indigent
11  and both were represented by private lawyers hired by their parents
12  under CrR 3.1(F), Punsalan's lawyer asked the trial court
13  for $6,000 to retain psychologists, and Hanson's lawyer requested
14  $6,000 for a forensic pathologist, finding that both defendants had forfeited
15  their right to state-funded expert service by retaining counsel, the
16  trial court denied their requests. Both men appealed, and Division 1
17  of the state court of Appeals certified the cases to the state supreme
18  court. In a unanimous decision, the state supreme court agreed that CrR
19  3.1(F) makes no distinction between those with appointed counsel and
20  those with private counsel when it GRANTS indigent expert services at
21  Public expense. The COURT also, recognized that CrR 3.1(F) incorporates
22  the SIXTH Amendment (U.S. const) GUARANTEE OF EXPERT service
23  necessary for an adequate defense, at Public expense, for defendant
24  S without the funds to pay for those services. The APPELLANT
25  IS Requesting expert services at Public expense The APPELLANT
26  is indigent, without the funds to pay for APPOINTED counsel that CrR
27  3.1(F) incorporates the sixth Amendment (U.S. const.) GUARANTEE OF expert
28  services necessary for an adequate defense, at Public expense, for

9

1  Section (d) IF you sought relief in any proceding other than an Appeal, Answer

2  the Following questions For EACH Proceeding I, II, III, IV, AND B. GROUNDS FOR

3  Relief CLAIM ONE, TWO, THREE, AND also SUPPORTING FACTS;

4  the APPELLANT Similar conditions Related to MENTAL RETARDATION or

5  Autism, or People Required or Requiring TREATMENT similar to that

6  required For MENTAL RETARDATION or Autism, to Enter the diversion

7  PROGRAM, Pen. code 1001.21 (a)(b) and 1001.34 Welf AND Inst. code

8  6000.5 AND 4512, Subd (a) Pen. code Sect. 4011-6, or 8 AND ALSO

9  the APPELLANT Reading LEVEL is 2.3 he can not Read that Good

10  he have to get other Inmates to Help him to Write Letters or A

11  Petitions For WRIT OF Habeas CORPUS. REGARD OF INMATE BARNETT

12  He Ask me to Write this Petition FOR WRIT OF Habeas FOR him his

13  conditions Related to Mental Retardation AND his Reading LEVEL

14  he do Not understand or understood How to Read or How to Write

15  this UP, IN REGARD OF INMATE BARNETT the APPELLANT HIS Disabilities

16  to understand OR INTELLECTUAL OR Intelligence understand or understood

17  What you said or say, It is Hard to do understand or understood

18  or it is Difficult OR DIFFICULTY for the APPELLANT to understand or

19  understood what you said or say to the APPELLANT you have to EXPLAIN

20  IN DETAIL What it mean Where the APPELLANT CAN INTELLIGENCE

21  understand and also understood What they are TALKING about and what it

22  mean or meant the APPELLANT have DIFFICULT to understand What it

23  meant OR mean you have EXPLAIN IN DETAIL What it meant or mean

24  the APPELLANT counsel was Ineffective Assistance OF Counsel or

25  competent OR Incompetent and INEFFECTIVE ASSISTANCE OF Counsel

26  Performed deficiently at penalty phase NonCapital case, the Trial

27  counsel BY failing to adequately investigate or prepare; The defendant

28  Received Ineffective of counsel, see Attached sheet Extra paper

10

section (9) IF you sought relief in any proceeding other than an APPEAL, Answer the Following questions FOR EACH PROCEEDING I) F) TIF) IV) AND B. GROUNDS FOR Relief CLAIM ONE, TWO, THREE. AND also SUPPORTING FACTS;

LEGAL Assistance and has no Funds With Which to hine counsel
Petitioner, currently unrepresented and unable to afford counsel, but
desiring appointment of counsel, Respectfully requests the court, to
APPOINTMENT OF COUNSEL @ X. GENERAL PROVISIONS FED. Rule
44-1. (a)(b) Pursuant to the Criminal Justice Act OF 1964. Fed. Rule @
Criminal P. 44-2. (2) on APPeal. Civil Local Rules Civil L.R. @ 15
(F), (9), (C); FRCIV. P., FRCrim P.; Federal Rule. and Civil Local Rules
@ 83-3. (b) procedure for Publication comment on local Rules.; (b)
Public submissions. Any person may written suggestions for amendments
to the Local Rules. Such suggestion shall be directed to the Chief Judge,
who shall refer the matter to the Local Rules Advisory committee for
consideration. upon such referral, the Local Rules Advisory committee shall
acknowledge receipt of the suggestion to the author and evaluate it in
accordance with Civil L.R. 83-2 (a), (c), " 2-7. ADR UNIT (a), (c);
(a) STAFF and Responsibilities AND 9/50 (C) contacting the ADR unit.
I don't understand some OF your FEDERAL Local Rules I
am not for sure I am doing this right FOR INMATE BARNETT
Petition But INMATE BARNETT he Need A LAWYER or ATTORNEY
to APPOINTED him a counsel A LAWYER where thyx LAWYER can
prepare a right Federal Petition were determining whether counsel
should be appointed in a non-capital habeas case so APPOINTMENT
the PRO BONO ASSISTANCE OF COUNSEL in a Federal Petition AND Also
See Washington V. Punsalan, 156 Wash. 2d 875; 133 P.3d 934 (Wash.
2006 See Next Page on this ISSUES here

11

Section (a) IF you sought relief in any proceeding other than an appeal
ANSWER the following questions FOR EACH Proceeding I) II) III) IV) AND B. GROUND
FOR Relief CLAIM ONE, TWO, THREE, AND ALSO SUPPORTING FACTS;

Requests for accommodations by person with disability yes (1)(2) ADA
coordinator; also see Maryann V. Jones, 32 U.S. F.G. Rev. 75 (1997)
also see Rafferty V. Cranston Public School Committee, 315 F.2d 21,
2002 under state a Education department, under the 2nd Individuals
with Disabilities Education Act & 601, 615 (d), (g) (IDEA) AND the
Rehabilitation Act. 201 f. supp. 2d 223, Richardson V. Hillman, (S.D.N.Y.
2002) Civil Rights of Institutionalized Person Act & 7(a), 42
U.S.C.A. & 1997 e (a).

His counsel was Ineffective Assistance of counsel or
competent and INEFFECTIVE ASSISTANCE OF COUNSEL performed
deficiently at penalty phase None Capital; CCR TITLE 3.
432 short Form

    The APPELLANT IS REQUESTING FOR IN Determining
whether counsel should be appointed in a non-capital Habeas Case,
the court should evaluate the likelihood of success on the merits
as well as petitioner's ability to articulate his claims pro se.
Wilburn V. Escalderon, 789 F.2d 1328 (9th Cir. 1986). This court
should has found sufficient possibility of merit in petitioner's claim to
Issue an order to file a response. Petitioner is utterly untrained in
the law, and has no ability to articulate his claims pro se. He
has relied up to this point on the pro bono assistance of a counsel
in the state appeal proceeding, and on his own unEducated judgment
that nothing (until now) has motion for Appointment of counsel
been required of him. The APPELLANT AND petitioner will not be able
to file his responding papers without see Attached sheet Extr. Paper

12

1  Section (9) IF you Sought relief in any proceeding other than an Appeal,
2  Answer the following questions FOR EACH PROCEEDING I, II, III, IV, AND B. GROU-
3  NDS FOR RELIEF CLAIM ONE, TWO, THREE, AND also SUPPORTING FACTS;
4  AND ALSO See people V. CARTER 30 CAL. 4th 1166, 135 2d 553, 70
5  P. 3d 981 (2003); UNITED STATES CONST. AMEND. 6, CAL. CONST. ART. 1.
6  ¶ 15. People V. JONES, 30 cal. 4th 1084. 135 2d 370, 70 P. 3d 359 (2003),
7  ARTICLE 11. penal code Section 4011.6 OR 4011.8 · 1209 mental Health
8  Service and " TRANSFER TO TREATMENT FACILITY WELFARE AND INSTITUTIONS
9  code Section 5326.2, also See Witkin cal. proc. 4th (1997) Att (5) 435
10  P. 539, 14. (435) client Under a Disability (Rule 1.14) and C.R.C., Rule 9843,
11  (b) (1) and C.C.51 CALIFORNIA CIVIL code Section 51 (3) and 42 U.S.C.
12  12.101 (3) (b) policy See also Rafferty V. Cranston Public School
13  committee 315 F. 3d 21, 2002, State Education department, under the
14  Individuals with Disabilities Education Act § 601 and 615 (d) (3)
15  (IDEA) and the Rehabilitation Act. See ALSO 201 F. Supp. 2d 202,
16  Richardson V. Hillman, (S.D.N.Y. 2002) Civil Rights of Institutionalized
17  person Act § 7 (a), 42 U.S.C.A. § 1997 e (a), see also Requests For
18  accommodations by person with disabilities (1) (2) ADA coordinator;
19  also see maryann V. Jones, 32 U.S.F.L. Rev. 75 (1997).
20  The APPELLANT COUNSEL was INEFFECTIVE ASSISTANCE OF COUNSEL OR
21  competent and INEFFECTIVE ASSISTANCE OF COUNSEL PERFORMED deficiently
22  at penalty phase None capital; CCR TITLE 3. 432 Short Form The
23  TRIAL counsel DID not PROPER PREPARE Adequately Investigate
24  OR PREPARE A MOTION FOR the Defendant was Developmental disabled
25  established under the Lanterman development disabilities Service Act,
26  LANTERMAN – PETRIS – SHORT; People V. ANDRADE 79, Cal. App. 4th 651,
27  94 2d 314 (2000) AND ALSO MURTISHAW V. WOODFORD 255 F. 3d 926,
28  (9th cir. 2001) see Attached Sheet EXTRA PAPER.

13.

STATEMENT OF CLAIM ATTACHMENT— During my trial, I was found to be compitant by two doctors and not compitant by one. "This report is saying similar things, regarding the fact, that MR. BARNETT is mildly mentally retarded and of need of assistance, in many areas." Some areas of deficit are, in comprehension, basic academic skills, intellectual function and his denial of mental disfunction. His short term memory, does not allow him, to do many simple tasks and makes him in need of assistance. After numerous attempts to get assistance for myself, I was introduced to the JEFF DICKS MEDICAL Coalition, in hopes of getting them to contact the C.D.C. on my behalf. With this in mind, I would ask of you, to go over my case again, so I could be granted American Disability Act assistance and learn how to function, within the C.D.C. system. MR. BARNETT has a Forty Five to life sentence and needs help, over the course of many years to come! MR. BARNETT is a VERY UN-FORTUNATE MAN, who suffers from

14

A combination of conditions, which reduce his ability to function effectively in the world. He is of low intelligence, probably mentally retarded. He shows elements of borderline personality disorder, occationally going over the line, into psychotic area, with hallucinations, delusions about the devil, etc. He also has anti-social traits, in his personality. He has a tendency-towards depression, probably because of frustration and unsatisfying nature of his life in general. He has poor inpulse control and requently becomes angry, because of his frustration with situations, which he cannot understand, or deal with.

Please take this, in consideration, with granting him full, or particial A.D.A. status. He also has a seizure disorder, which requires medication and a lower bunk.

Section (a) If you sought relief in any proceeding other than appeal, ANSWER

the following questions for EACH proceeding I, II, III, IV; AND B. GROUNDS FOR

Relief CLAIM ONE, TWO, THREE. And also SUPPORTING FACTS;

petitioner without the funds to pay for those services. Entitles

indigent PETITIONERS OR DEFENDANTS to expert services at

the PUBLIC EXPENSE See Washington V. Punsalan, 156 Wash 2d 875,

133 P.3d 934 (Wash. 2006) The SUBJECT WAS APPOINTED BY

APPOINTMENT as MEDICAL EXAMINER UNDER SECTION 1368 of the

Penal code determining mental competence.; See Documentations on

this ISSUE APPOINTMENT as MEDICAL Examiner under section 1368 OF

the Penal code. AND ALSO See DOCUMENTATION FROM the PRISON

CALIFORNIA OF DEPARTMENT OF CORRECTIONS AND CALIFORNIA MEDICAL

FACILITY AND REHABILITATION AND APPOINTMENT OF PSYCHOTHERAPIST

DOCTOR From C.D.C. AND ALSO See DOCUMENTATION OF TESTS OF

Adult Basic Education (TABE) His grade LEVEL scores are as

Follows: Reading: 2.5. Mathematics: 3.3. Language: 2.3

Spelling: 6.1 TOTAL Battery: 2.9 See ATTACHED OR ENCLOSED

DOCUMENTATIONS

    See ATTACHED OR ENCLOSED EXHIBITS A THRU

A-21, on the LOWER STATE COURT Petition FOR WRIT OF

HABEAS CORPUS I FILED IN the LOWER STATE COURT

I would Like please be GRANTED to PROCEED IN FORMA

PAUPEIS APPLICATION OR The PRISONER AND PETITIONER

Will NEED HELP to WRITE UP his OPEN BRIEF IN THE FEDERAL

PETITION HE Will NEED HELP to FILE his OPEN BRIEF BY COURT

APPOINTED COUNSEL: See ATTACHED OR ENCLOSED EXHIBIT

S ("( B) AND C) AND D) AND E."),... See Also Rompilla V. BEARD, 545 U.S.

374, 125 S.Ct. 2456, 162 L.Ed. 2d 360 (2005).

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases: _Rompilla v. Beard_, 545 U.S. 374, 125 S. Ct. 2456, 162 L.2d 360 (2005) U.S.

4    _U.S. v. Booker_, 543 U.S. 160, L.Ed.2d 621, 125 S. Ct. 738, see see _Mannina v. Foster_,

5    224 F.3d 1134 (9th Cir. 2000); _Dennis La Crosse v. United States Court of Appeal for Ninth

6    Circuit_, 244 F.3d 702, 2001 U.S. App. Lexis 4585), _Strickland v. Washington_ 466 U.S. 668

7    800 L.Ed.2d 674, 104 S. Ct. 2052 (1984) see _United States v. Cronic_ (1984) 104 S.Ct.2039

People v. Pope (1979) 23 Cal.3d 412, 415-26, _People v. Frieron_ (1963) L.Ed.2d 864, 83 S.Ct. 825

see the rest on the petition here page 7 Thur gang page 18 Andrale 19 Cal. App. 4th 1839-51

Do you have an attorney for this petition?           Yes_____  No _X_

8    If you do, give the name and address of your attorney: _Davis, Kipp, 170 W. Mission Street - Public Defender Office San Jose, CA 95110_

9

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on **MARCH 02, 2008**                 _Dennis Roy Beard_

14               Date                         Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 7 -

# EXHIBIT-E

S146804

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re DENNIS RAY BARNETT on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780.)

George, C. J., was absent and did not participate.

SUPREME COURT
FILED

APR 1 1 2007

Frederick K. Ohlrich Clerk

Deputy

**MORENO**

Acting Chief Justice

STATE OF CALIFORNIA

CDC - 193 (1/88)

DEPARTMENT OF CORRECTIONS

# TRUST ACCOUNT WITHDRAWAL ORDER

To: Warden _____ Approved _____ Date MARCH 8, 20 08

I hereby request that my Trust Account be charged $ 5.00 Dollars for the purpose stated below and authorize the withdrawal of that sum from my account:

CTB39
NUMBER

State below the PURPOSE for which withdrawal is requested
(do not use this form for Canteen or Hobby purchase).

PURPOSE PLEASE SEND $5.00 DOLLARS CHECK
TO THE FEDERAL COURT FOR FILING MY
FEDERAL PETITION FOR WRIT TO BE FILING MY
PLEASE THANK YOU PLEASE SEND THE 5.00 DOLLARS
CHECK AS SOONER AS POSSIBLE PLEASE THANKS
AGAIN.

_____
NAME (Signature please, DO NOT PRINT)

PRINT PLAINLY BELOW name and address of person
to whom check is to be mailed.

UNITED STATES DISTRICT COURT NORTHERN DISTRICT
OF CALIFORNIA COURTHOUSE AND FEDERAL BUILDING
NAME MAGISTRATE JUDGE

ADDRESS 450 GOLDEN GATE AVENUE

SAN FRANCISCO, CA 94102

DENNIS RAY BARNETT
PRINT YOUR FULL NAME HERE

STATE OF CALIFORNIA

CDC - 193 (1/88)

DEPARTMENT OF CORRECTIONS

# TRUST ACCOUNT WITHDRAWAL ORDER

To: Warden _____ Approved _____ Date _March 08__, 20_08_

I hereby request that my Trust Account be charged $ _____ for the purpose stated below and authorize the withdrawal of that sum from my account:

C-7B39

NUMBER

PRINT PLAINLY BELOW name and address of person to whom check is to be mailed.

_Dennis Ray Barnett_

NAME (Signature please, DO NOT PRINT)

State below the PURPOSE for which withdrawal is requested (do not use this form for Canteen or Hobby purchase).

NAME _____

ADDRESS _____

PURPOSE _PLEASE PUT POSTAGES ON THIS LEGAL MAIL AND MAILED IT AS SOON AS POSSIBLE PLEASE THANK YOU_

_DENNIS BARNETT NEW C/H. ORDER NOTB 031/08_

PRINT YOUR FULL NAME HERE

# VERIFICATION

I have read the above statements and herein declare under the pains and penalty of perjury that all of the foregone is true and correct, and to those matters based upon my own knowledge and belief, I also believe them to be true and correct.


/s/ Dennis Beatty                    date: MARCH 02, 2008

CDC # C-77539

## DECLARATION OF SERVICE

I Dennis R. Barnett, declare that on the date of this declaration I served the following documents:

A Federal Petition for writ of Habeas Corpus the superior court petition for writ of Habeas Corpus was denied all level of the state petition level are exhaustion of all state court remedies. See Attached or enclosed exhibits A thur A-21. and a motion for appointment of counsel to be file with this Federal petition writ

on each of the below named person(s), by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid, in the United States Mails, at the facility where I am incarcerated, addressed as follows:

United States District Court
Northern District of California
Courthouse and Federal Building
Magistrate Judge Richard Seeborg
450 Golden Gate Avenue
San Francisco, CA 94102

I, Dennis R. Barnett, declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at the California Medical Facility in Vacaville, CA on

MARCH 02, _____ 2008

_Dennis Ray Barnett_

Dennis R. Barnett  C-77539

Pro Per, Petitioner, Appellant

VERIFICATION

STATE OF CALIFORNIA

ss:

COUNTY OF SOLANO

(C.C.P. § 446, § 2015, & 28 U.S.C. § 1746)

I, DENNIS RAY BARNETT _____ [Name], declare under the penalty of perjury that: I have read the foregoing documents and know the contents therein and know them to be true to my knowledge and belief, except as to matters expressly denied or beyond my knowledge or belief, those of which I believe to be true unless expressly denied herein.

Executed this 02, day of MARCH 02, , 20 08 , at California Medical Facility, Vacaville, California. 95696-2500.

[Signature] _Dennis Ray Barnett_
Declarant/Prisoner

*************************************************************

PROOF OF SERVICE BY UNITED STATES MAIL
(C.C.P. § 1013(a) §2015; 28 U.S.C. § 1746)

I, DENNIS RAY BARNETT _____ , am a resident at the California Medical Facility, in the County of Solano, State of California; I am over the age of eighteen (18) years, and am a party to the entitled action. My State Prison address is: P.O. BOX 2500    P-112 Tower _____ , Vacaville, California 95696-2 00.

On MARCH 02, , 20 08 , I served the following documents on the party(s) listed hereunder:

A FEDERAL PETITION FOR WRIT OF HABEAS CORPUS the SUPERIOR COURT PETITION FOR WRIT OF HABEAS WAS DENIED ALL LEVEL OF THE STATE PETITION LEVEL are STATE EXHAUSTION OF STATE COURT REMEDIES. SEE ATTACHED OR ENCLOSED. EXHIBITS A THRU A-21 AND A MOTION FOR APPOINTMENT OF COUNSEL TO BE FILE WITH THIS FOURTH PETITION FOR WRIT
[SET FORTH EXACT TITLE OF DOCUMENTS SERVED]

by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with all postage fully prepaid, in the United States Mail, in the deposit box as provided at the California Medical Facility, Vacaville, California, 95696-2 00, addressed as follows:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA;
COURT HOUSE AND FEDERAL BUILDING
MAGISTRATE JUDGE Richard Seeborg
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102

There is delivery service by United States Mail at the place so addressed and/or regular communications by mail between the place of mailing and the place so addressed I declare under the penalty of perjury that the foregoing is true and correct.

DATED: MARCH 02, , 20 08 .

_Dennis Ray Barnett_
Declarant/Prisoner/APPELLANT, PRO-PER,
DENNIS R. BARNETT, C-77530;
PETITIONER:

1   IF ANY OF these grounds was not previously
2   presented to any other court, state briefly
3   which grounds, were not presented and
4   why; Defendant counsel failure to
5   investigate defendant, or prepare
6   a motion, because defendant have
7   ineffective counsel and competant,
8   effective assistance of counsel.
9   (2) Ineffective assistance, counsel
10  performed deficiently, at penalty
11  phase of capital trial, by failing
12  to adequately investigate or pre-
13  pare; the defendant was develop-
14  mentaly disabled, established under
15  the LANTERMAN development disabilities
16  services act, penal code 1001.20 (a)
17  As amended in 2004, Additionally
18  Applies the program's availability
19  to person with cognitive devel
20  opmental disabilities, which per-
21  mits persons with autism, or sim-
22  iler conditions related to mental
23  Retardation or autism, or people
24  requiring treatment similar to
25  that required for mental re-
26  tardation or autism, to enter
27  the diversion program., penal
28  code 1001.21 (a) (b) and also

1

IF ANY OF these GROUNDS was NOT previously presented to ANY other court, State briefly which
GROUNDS were NOT Presented, and why:
Case 1:— Document 1-2   Filed 03/24/2008   Page 2 of 38

PEN. CODE 1001.20 (A) (b) (c),
PEN. CODE 1001.23 (A) (b) AND 1001.34
WELF AND INST. CODE 6000.5 AND
4512, subd (A). PENAL CODE SECTION
4011.6, OR 8. LANTERMAN - PETRIS-
SHORT PEOPLE V. ANDRADE 79, CAL.
APP. 4th 651,94 2d 314 (2000) AND
ALSO MAYFIELD V. WOODFORD 270 F.
3d 915 (9th CIR. 2001) AND SEE
ALSO MURTISHAU V. WOODFORD 255 F.
3d 926, (9th CIR. 2001) AND ALSO
SEE PEOPLE V. CARTER 30 CAL. 4th
1166, 135 2d 553, 70 p. 3d 981 (2003);
United States Const. AMEND. 6, CAL.
Const. ant. 1.315 PEOPLE V. JONES,
CAL. 4th 1084. 135 2d 370 70 p 3d
359 (2003), ARTICLE 11 - PENAL CODE
SECTION 4011.6 OR 4011.8, . 1209
MENTAL HEALTH SERVICES AND TRANSFER
to treatment FACILITY WELFARE
AND INSTITUTIONS CODE SECTION
5326.2, ALSO SEE Wilkins, CAL.
PROC. 4th (1997) Attys, 435 P. 539,
14. (435) CLIENT UNDER A DISABILITY
(RULE 1.14) AND C.R.C., RULE 989.
3(b) (1) AND C.C.51 CAL. CIVIL CODE
SECTION 51 (3) AND 42 W.S.C. 121101
(3)(b) POLICY

2

If ANY of these grounds was not previously presented to ANy other court state
bnefly which grounds, were not presented and why Below here

the APPELLANT Similer conditions Related to MENTAL RETARDATION or
Autism, or people Required or Requiring TREATMENT similar to that
required for MENTAL RETARDATION or Autism, to Enter the diversion
PROGRAM, Pen. Code 1001.21 (a)(b) and 1001.34 Welf AND INST. Code
6000.5 AND 4512, Subd (a) Pen. code sect. 4011-6, or 8 AND ALSO
The APPELLANT Reading LEVEL is 2.3 he can not Read that good
he have to get other Inmates to Help him to Write Letters or A
Petitions for WRIT of Habeas CORPUS. REGARD of INMATE BARNETT
he ASK me to write this petition for WRIT of Habeas FOR him his
conditions Related to mental Retardation AND his Reading LEVEL
he do Not understand or understood How to Read or How to Write
this up, IN REGARD OF INMATE BARNETT the APPELLANT HIS Disabilities
to understand or INTELLECTUAL or Intelligence understand or understood
what you said or say, It is Hard to do understand or understood
or it is DIFFICULT OR DIFFICULTY for the APPELLANT to understand or
understood what you said or say to the APPELLANT you have to EXPLAIN
IN DETAIL what it mean where the APPELLANT CAN INTELLIGENCE
understand and also understood what they are TALKING about and what it
mean or meant, the APPELLANT have DIFFICULT to understand what it
meant or mean you have EXPLAIN IN DETAIL what it meant or mean
The APPELLANT counsel was Ineffective assistance of counsel or
competent or Incompetent and INEFFECTIVE ASSISTANCE OF counsel
performed deficiently at penalty phase None capital case, the Trial
counsel BY failing to adequately investigate or prepare; The defendent
received Ineffective of counsel, see Attached sheet EXTRA paper

3

1  If Any of these grounds was Not previous presented to Any other Court state

2  Briefly which grounds, were Not presented and why Below her

3

4  AND ALSO See people V. CARTER 30 CAL. 4th 1166, 135 2d 553, 70

5  P. 3d 981 (2003); UNITED STATES CONST. AMEND. 6, CAL. CONST. ART. 1.

6  23 15. People V. JONES, 30 Cal. 4th 1084. 135 2d 370, 70 P. 3d 359 (2003),

7  ARTICLE 11. penal Code Section 4011.6 or 4011.8. & 1209 mental Health

8  Service and "C TRANSFER to TREATMENT FACILITY WELFARE AND INSTITUTIONS

9  Code Section 5326.2; also see Witkin, Cal. proc. 4th (1997) Att.5, 435

10  P. 539, 14. (435) Client Under a Disability (Rule 1.14) and C.R.C., Rule 989.3,

11  (b)(4) and C.C.51 CALIFORNIA CIVIL Code Section 51 (3) and 42 U.S.C

12  12 101 (3)(b) POLICY See also Rafferty V. Cranston Public School

13  Committee 315 F. 3d 21, 2002, State Education department, under the

14  Individuals with Disabilities Education Act § 601 and 615 (d)(9)

15  (IDEA) and the Rehabilitation Act. See Also 201 F. Supp. 2d 202,

16  Richardson V. Hillman, (S.D.N.Y. 2002) Civil Rights of Institutionized

17  Person Act § 7(a), 42 U.S.C.A. § 1997e(a), see also Requests for

18  accommodations by person with disabilities (1)(2) ADA coordinator;

19  also see Maryann V. Jones, 32 U.S.F.L. Rev. 75 (1997).

20  The APPELLANT Counsel was INEFFECTIVE ASSISTANCE OF Counsel OR

21  Competent and INEFFECTIVE ASSISTANCE OF Counsel Performed deficiently

22  at penalty Phase None capital; CCR TITLE 3. 432 Short Form The

23  Trial Counsel Did not PROPER PREPARE Adequately INVESTIGATE

24  or prepare A Motion For the Defendant was Developmental disabled

25  established under the Lanterman development disabilities service Act,

26  LANTERMAN-PETRIS-SHORT; People V. ANDRADE 79, Cal. App. 4th 651,

27  94 2d 314 (2000) AND ALSO MURTISHAH V. WOODFORD 255 F. 3d 926,

28  (9th Cir. 2001) See Attached Sheet EXTRA PAPER.

P. 4

If any of the grounds were not previously presented to any other court, state Briefly which grounds were not presented and why;

Requests for accommodations by person with disabilityes (1)(2) ADA Coordinator; also see Maryann V. Jones, 32 U.S. F.4. Rev. 75 (1997) also see Rafferty V. Cranston Public School Committee, 315 F.3d 21, 2002 under state Education department, under the Individuals with Disabilities Education Act & 601, 615 (d), (g) (IDEA) AND the Rehabilitation Act. 201 F. Supp. 2d 222; Richardson V. Hillman, (S.D.N.Y) 2002) Civil Rights of Institutionalized Person Act & 7(a), 42 U.S.C.A. § 1997 e (a).

His counsel was Ineffective Assistance of Counsel or Competent and INEFFECTIVE ASSISTANCE OF COUNSEL performed deficiently at Penalty phase none capital; CCR TITLE 3. 432 Short Form

The APPELLANT IS REQUESTING FOR In Determining whether counsel should be Appointed in a non-capital habeas case, the court should evaluate the Likelihood of success on the merits as well as petitioner's ability to articulate his claims pro se. Wilburn V. Escalderon, 789 F.2d 1328 (9th cir. 1986). This court should has found sufficient possibility of merit in petitioner's claim to Issue an order to file a response. Petitioner is utterly untrained in the law, and has no ability to articulate his claims pro se. He has relied up to this point on the pro Bono assistance of a counsel in the state appeal proceeding, and on his own uneducated judgment that nothing (until now) has motion for Appointment of counsel been required of him. The APPELLANT AND petitioner will not be able to file his responding papers without see Attached sheet extr. PAPER

5

1  IF ANY OF these grounds was not previously presented to ANY other court,
2  State Briefly which grounds, were not presented and why; Below here

3

4  LEGAL Assistance and has no Funds With Which to hine counsel
5  Petitioner, currently unrepresented and unable to afford counsel, but
6  desiring appointment of counsel, Respectfully requests the court, to
7  APPOINTMENT OF COUNSEL @ X. GENERAL PROVISIONS Fed. Rule
8  44-1.(a)(b) pursuant to the Criminal Justice Act OF 1964. Fed. Rule @
9  Criminal P. 44-2.(a) on Appeal. Civil Local Rules Civ. L.R. @ 1-5
10  (F), (9), (i); FRCiv. P., FR Crim P., Federal Rule. and Civil Local Rules
11  @ 83-3.(b) procedure For Publication Comment on local Rules., (b)
12  Public submissions. Any person may written suggestions For amendments
13  to the local Rules. Such suggestion shall be directed to the Chief Judge,
14  Who shall refer the matter to the Local Rules Advisory committee For
15  consideration. upon such referral, the local Rules Advisory committee shall
16  acknowledge receipt of the suggestion to the author and evaluate it in
17  accordance with Civil L.R. 83-2 (a), (d)... 27. ADR UNIT (a), (C),
18  (d) STAFF and Responsibilities AND also (C) contacting the ADR UNIT.
19  I don't understand some of your FEDERAL Local Rules I
20  am not For sure I am doing this right FOR INMATE BARNETT
21  Petition But INMATE BARNETT he Need A LAWYER or ATTORNEY
22  to APPOINTED him a counsel A LAWYER where they LAWYER can
23  prepare a right Federal Petition were determining whether counsel
24  should be appointed in a non-capital habeas case @ APPOINTMENT
25  the PRO BONO ASSISTANCE OF COUNSEL in a Federal Petition AND ALSO
26  See Washington V. Punsalan, 156 Wash. 2d 875; 133 P.3d 934 (Wash.
27  2006 See Next Page on this ISSUES here

28

6

1. IF ANY OF these grounds was NOT PreViously Presented to ANY other courts state
2. brieFLY Which grounds, Were NOT Presented AND WHY;

3. _____

4. AND also see Washington V. Punsalan, 156 Wash. 2d 875, 133
5. P.3d 934 (Wash. 2006). The Washington STATE SupReme court
6. has ruled that CrR 3.1 (F) entitles Indigent criminal defendants
7. to expert services at Public expense, even iF they're represente
8. d by Private COUNSEL.; ROBiN Punsalan and chayce ArDen Hanson were
9. Proscuted in the King county superFor court in seattle, washington –
10. Punsalan For Robbery and Hanson For manslaughter, Both were Indigent
11. and both were represented by private Lawyers hired by their parents
12. under CrR 3.1 (F). Punsalan's Lawyer ~~requested~~ asked the trial court
13. For $6,000 to retain Psychologists, and Hanson's Lawyer requested
14. $6,000 For a Forensic Pathologist. Finding that both defendants had Forfeited
15. their Right to state–Funded expert service by retaining counsel, the
16. trial court denied their requests. Both men appealed, and Division 1
17. oF the state court oF Appeals certiFied the cases to the state supreme
18. court. FN a unanimous decision, the state supreme court agreed that CrR
19. 3.1 (F) makes no distinction between those with appointed counsel and
20. those with private counsel When it GRANTS Indigent expert services at
21. Public expense. The court also, recognized that CrR 3.1 (F) incorporates
22. the SIXTH AmenDment (US. Const) GUARANTEE OF EXPERT service
23. necessary For an adequate deFense, at public expense, For deFendant
24. s Without the FunDs to pay For those serVices. The APPELLANT
25. IS Requesting Expert services at Public expense. The APPELLANT
26. is indigents Without the Funds to pay For APPOINTED counsel that CrR
27. 3.1 (F) incorporates the Sixth AmenDment (US. const.) GUARANTEE OF expert
28. services necessary For an adequate deFense, at public expense, For

7

IF ANY OF these grounds Was NOT previously presented to ANY other COURT, STATE briefly Which grounds, Were NOT presented AND Why;

petitioner without the funds to pay for those services. Entitles indigent PETITIONERS OR DEFENDANTS to expert services at the PUBLIC EXPENSE see Washington V. Punsalan, 156 Wash.2d 815, 133 P.3d 934 (Wash. 2006) The SUBJECT Was APPOINTED BY APPOINTMENT as MEDICAL EXAMINER UNDER SECTION 1368 OF the Penal code determining mental competence.; see Documentations on this ISSUE APPOINTMENT as MEDICAL Examiner under section 1368 OF the Penal code. AND ALSO see DOCUMENTATION FROM the PRISON CALIFORNIA OF DEPARTMENT OF CORRECTIONS AND CALIFORNIA MEDICAL FACILITY AND REHABILITATION AND APPOINTMENT OF PSYCHOTHERAPIST DOCTOR FROM C.D.C. AND ALSO see DOCUMENTATION OF TESTS OF Adult Basic Education (TABE) His grade LEVEL scores are as Follows: Reading: 2.5. mathematics: 3.3. Language: 2.3 Spelling: 6.1 TOTAL Battery: 2.9 see ATTACHED OR ENCLOSED DOCUMENTATIONS

    See ATTACHED OR ENCLOSED EXHIBITS A THUR A-21, on the LOWER STATE COURT Petition FOR WRIT OF HABEAS CORPUS I FILED IN the LOWER STATE COURT I would Like please Be GRANTED to PROCEED IN FORMA PAUPEIS APPLICATION OR the PRISONER AND PETITIONER WILL NEED HELP to WRITE UP his OPEN BRIEF IN THE FEDERAL PETITION HE Will NEED HELP to FILE his OPEN BRIEF BY COURT APPOINTED COUNSEL; see ATTACHED OR ENCLOSED EXHIBIT S "B THUR C, AND D, AND E"

my trial, I was found to be compitant by two doctors and not compitant by one. "This report is saying similar things, regaurding the fact, that MR. BARNETT is mildly mentally retarded and of need of assistance, in many areas." Some areas of deficit are, in comprehension, basic academic skills, intellectual function and his denial of mental disfunction. His short term memory, does not allow him, to do many simple tasks and makes him in need of assistance. After numerous attempts to get assistance for myself, I was introduced to the JEFF DICKS MEDICAL Coalition, in hopes of getting them to contact the C.D.C., on my behalf. With this in mind, I would ask of you, to go over my case again, so I could be granted American Disability Act assistance and learn how to function, within the C.D.C. system. MR. BARNETT has a Forty five to life sentence and needs help, over the course of many years to come! MR. BARNETT is a VERY UN-FORTUNATE MAN, WHO SUFFERS FROM

If any of these grounds was not previously presented to any other courts, state briefly which grounds, were not presented and why:

Case 3:08-cv-01404-RMW   Document 1-2   Filed 03/24/2008   Page 10 of 38

A combination of conditions, which reduce his ability to function effectively in the world. He is of low intelligence, probably mentally retarded. He shows elements of borderline personality disorder, occationally going over the line, into psychotic area, with hallucinations, delusions about the devil, etc. He also has antisocial traits, in his personality. He has a tendency towards depression probably because of frustration and unsatisfying nature of his life in general. He has poor impulse control and frequently becomes angry, because of his frustration with situations, which he cannot understand, or deal with.

Please take this, in consideration, with granting him full, or particial A.D.A. status. He also has a seizure disorder, which requires medication and a lower bunk.

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS                    CDC 128-B

**NAME AND NUMBER**   BARNETT   C-77538   H-314-L

On _6/16/03_ this inmate was tested with the tests of Adult Basic Education (TABE). His grade level scores are as follows:

**Reading:** _2.5_ **Mathematics:** _3.3_ **Language** _2.3_ **Spelling:** _6.1_ **Total Battery:** _2.9_

*Total score is Norm Referenced (Survey Form) or (Full Battery) or 8 Level: E M D A

CENTRAL FILE
CC: CC1
CC: Compliance Team
    Inmate

E. Enhouse
E. EINHOUSE
Academic Testing
CMF

```
                    Pre-test Report for  BARNETT    DENNIS
ID Number: C-77539                            SU 01 NOVEMBER 04
Test Date: 11/01/04                           TABE7/8 SURV OFFEN
Run Date: 11/01/04                            EINHOUSE
Page No. 1                                    039 PRE
```

| Subtests | L/F | NC | NA | SS | GE | NP | NCE | NS | OM | Predicted | GED |
|----------|-----|----|----|----|----|----|----|----|----|-----------|-----|
| Reading | E7 | 13 | 25 | 395 | 2.3 | 16 | 29 | 3 | 20 | Reading | 33 |
| Math Compu | E7 | 13 | 13 | | | | | | 50 | Math | 34 |
| Applied Math | E7 | 10 | 25 | 385 | 2.4 | 12 | 25 | 3 | 17 | Writing | 27 |
| Language | E7 | 6 | 21 | 316 | 1.2 | 7 | 18 | 2 | 0 | Science | 35 |
| Spelling | E7 | 19 | 20 | 533 | 6.9 | 75 | 64 | 6 | 100 | Soc/Std | 33 |
| | | | | | | | | | | Average | 29 |
| Total Math | | 23 | 38 | 427 | 3.4 | 20 | 32 | 3 | | | |
| Total Battery | | 42 | 84 | 379 | 2.3 | 8 | 20 | 2 | | | |

```
L/F=Test Level & Form    NC=Number Correct      NA=Number Attempted
SS=Scale Score           GE=Grade Equivalent    NP=National %ile
NCE=Normal Curve Equiv   NS=National Stanine     OM=% of Obj. Mastered
```

| Objectives | Score | MST Level | Percent |
|------------|-------|-----------|---------|
| **Reading** | | | |
| INTERP.GRAPHICS | 3/ 6 | P | 50 |
| WDS. IN CONTEXT | 4/ 4 | + | 100 |
| RECALL INFORMA. | 2/ 4 | P | 50 |
| CONSTRUCT MEAN. | 3/ 8 | − | 37 |
| EVAL/EX.MEANING | 1/ 3 | − | 33 |
| Subtest Avg | | | 52 |
| **Math Compu** | | | |
| ADD / SUBTRACT | 8/ 8 | + | 100 |
| MULTIPLY / DIV. | 5/ 7 | P | 71 |
| Subtest Avg | | | 87 |
| **Applied Math** | | | |
| NUMERA/NUM THEO | 0/ 6 | − | 0 |
| DATA INTERPRET. | 2/ 4 | P | 50 |
| PRE-ALG/ALGEBRA | 1/ 2 | P | 50 |
| MEASUREMENT | 3/ 4 | + | 75 |
| GEOMETRY | 2/ 4 | P | 50 |
| COMPU CTXT/ESTI | 2/ 5 | − | 40 |
| Subtest Avg | | | 40 |
| **Language** | | | |
| USAGE | 2/ 7 | − | 28 |
| SENTENCE FORMA. | 1/ 4 | − | 25 |
| PARAGRAPH DEVEL | 1/ 4 | − | 25 |
| CAP/PUNC/WRTCNV | 2/10 | − | 20 |
| Subtest Avg | | | 24 |

| Objectives | Score | MST Level | Percent |
|------------|-------|-----------|---------|
| **Spelling** | | | |
| VOWEL | 8/ 8 | + | 100 |
| CONSONANT | 7/ 7 | + | 100 |
| STRUCTURAL UNIT | 4/ 5 | + | 80 |
| Subtest Avg | | | 95 |
| **Total Average** | | | 55 |

# WAIS-R RECORD FORM

**WECHSLER ADULT INTELLIGENCE SCALE—REVISED**

NAME _Barnes Dennis_

ADDRESS _____

SEX _____ AGE _23_ RACE _____ MARITAL STATUS _____

OCCUPATION _____ EDUCATION _____

PLACE OF TESTING _____ _NRC_ _____ TESTED BY _NH_

## TABLE OF SCALED SCORE EQUIVALENTS*

| Scaled Score | VERBAL TESTS — Information | Digit Span | Vocabulary | Arithmetic | Comprehension | Similarities | PERFORMANCE TESTS — Picture Completion | Picture Arrangement | Block Design | Object Assembly | Digit Symbol | Scaled Score |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19 | — | 28 | 70 | — | 32 | — | — | — | — | 51 | 93 | 19 |
| 18 | 29 | 27 | 69 | — | 31 | 28 | — | — | — | 41 | 91-92 | 18 |
| 17 | — | 26 | 68 | 19 | — | — | 20 | 20 | 50 | — | 89-90 | 17 |
| 16 | 28 | 25 | 66-67 | — | 30 | 27 | — | — | 49 | 40 | 84-88 | 16 |
| 15 | 27 | 24 | 65 | 18 | 29 | 26 | — | 19 | 47-48 | 39 | 79-83 | 15 |
| 14 | 26 | 22-23 | 63-64 | 17 | 27-28 | 25 | 19 | — | 44-46 | 38 | 75-78 | 14 |
| 13 | 25 | 20-21 | 60-62 | 16 | 26 | 24 | — | 18 | 42-43 | 37 | 70-74 | 13 |
| 12 | 23-24 | 18-19 | 55-59 | 15 | 25 | 23 | 18 | 17 | 38-41 | 35-36 | 66-69 | 12 |
| 11 | 22 | 17 | 52-54 | 13-14 | 23-24 | 22 | 17 | 15-16 | 35-37 | 34 | 62-65 | 11 |
| 10 | 19-21 | 15-16 | 47-51 | 12 | 21-22 | 20-21 | 16 | 14 | 31-34 | 32-33 | 57-61 | 10 |
| 9 | 17-18 | 14 | 43-46 | 11 | 19-20 | 18-19 | 15 | 13 | 27-30 | 30-31 | 53-56 | 9 |
| 8 | 15-16 | 12-13 | 37-42 | 10 | 17-18 | 16-17 | 14 | 11-12 | 23-26 | ⟨28-29⟩ | 48-52 | 8 |
| 7 | 13-14 | 11 | 29-36 | 8-9 | 14-15 | 14-15 | 13 | ⟨8-10⟩ | ⟨20-22⟩ | 24-27 | 44-47 | 7 |
| 6 | 9-12 | 10 | 20-28 | 6-7 | 11-13 | 11-13 | ⟨11-12⟩ | 5-7 | 14-19 | 21-23 | 37-43 | 6 |
| 5 | 6-8 | 9 | 14-19 | 5 | 8-10 | 7-10 | 8-10 | 3-4 | 8-13 | 16-20 | 30-36 | 5 |
| 4 | 5 | 7 | 11-13 | ⟨4⟩ | ⟨6-7⟩ | 5-6 | 5-7 | 2 | 3-7 | 13-15 | ⟨23-29⟩ | 4 |
| 3 | ⟨4⟩ | ⟨6⟩ | 9-10 | 3 | 4-5 | ⟨2-4⟩ | 3-4 | — | 2 | 9-12 | 16-22 | 3 |
| 2 | 3 | 3-5 | ⟨6-8⟩ | 1-2 | 2-3 | 1 | 2 | 1 | 1 | 6-8 | 8-15 | 2 |
| 1 | 0-2 | 0-2 | 0-5 | 0 | 0-1 | 0 | 0-1 | 0 | 0 | 0-5 | 0-7 | 1 |

Clinicians who wish to draw a profile may do so by locating the subject's raw scores on the table above and drawing a line to connect them. See Chapter 4 in the Manual for a discussion of the significance of differences between scores on the tests.

### Date Tested / Date of Birth / Age

| | Year | Month | Day |
|---|---|---|---|
| Date Tested | 83 | 12 | 14 |
| Date of Birth | | | |
| Age | | | |

### SUMMARY

| | Raw Score | Scaled Score |
|---|---|---|
| **VERBAL TESTS** | | |
| Information | 4 | 3 |
| Digit Span | 6 | 3 |
| Vocabulary | 8 | 2 |
| Arithmetic | 4 | 4 |
| Comprehension | 7 | 4 |
| Similarities | 3 | 3 |
| **Verbal Score** | | 19 |
| **PERFORMANCE TESTS** | | |
| Picture Completion | 11 | 6 |
| Picture Arrangement | 10 | 7 |
| Block Design | 20 | 7 |
| Object Assembly | 28 | 8 |
| Digit Symbol | 29 | 4 |
| **Performance Score** | | 32 |

| | Sum of Scaled Scores | IQ |
|---|---|---|
| VERBAL | 19 | 63 |
| PERFORMANCE | 32 | 75 |
| FULL SCALE | 51 | 68 |

Ψ **THE PSYCHOLOGICAL CORPORATION**
HARCOURT BRACE JOVANOVICH, PUBLISHERS

Copyright © 1981, 1955, 1947 by The Psychological Corporation. Standardization Edition Copyright © 1976 by The Psychological Corporation. No part of this form may be copied by any process without permission. All rights reserved.
Printed in U.S.A.

9-991829

DEPARTMENT OF CORRECTIONS

STATE OF CALIFOR

GROUP TEST RESULTS    SUPPLEMENTAL TEST REPORT

DISTRIBUTION: 1 COPY TO
SACRAMENTO, FILE
PSYCHIATRIC, EDUCATION

| NAME | | NUMBER | | AGE | GRADE CLAIMED | | DATE |
|------|--|--------|--|-----|---------------|--|------|
| BARNETT, DENNY | | C-77539 | | 23 | | | DEC. 14, 1983 |

| ACADEMIC ACHIEVEMENT TESTS | | | | | INTELLIGENCE TESTS | | |
|---|---|---|---|---|---|---|---|
| **California Achievement Test** | | | | | A. G. C. T. Equiv. I.Q. | | Revised Beta I.Q. |
| Form: Elem. Inter. | Grade | | | Grade | Factors | %ile | Comments |
| 1. Reading Vocabulary | | 5. Mech. of Eng. | | | Verbal | | |
| 2. Reading Comprehension | | 6. Spelling | | | Numerical | | |
| Reading Average | | Language Average | | | Spatial | | |
| 3. Arithmetic Reasoning | | TOTAL GRADE PL. | | | Other Tests | | |
| 4. Arithmetic Fundamentals | | WRAT Arithmetic | | | WAIS TEST: VER: | 63 | |
| Arithmetic Average | | WRAT Reading | | | PER: | 75 | |
| Read. & Arith. Average | | WRAT Average | | | FULL: | 68 | |

GAVE EVIDENCE OF HAVING BEEN ADMINISTERED THE WAIS TEST PREVIOUSLY.

CDC 128M (2/76)

GROUP TEST RESULTS

DISTRIBUTION: 1 COPY TO
SACRAMENTO, FILE
PSYCHIATRIC, EDUCATION

| NAME | | NUMBER | | AGE | GRADE CLAIMED | DATE |
|------|--|--------|--|-----|---------------|------|
| BARNETT | C-77539 | C-48004-Z | | 22 | | 5-3-82 |

63

| ACADEMIC ACHIEVEMENT TESTS | | | | | INTELLIGENCE TESTS | | |
|---|---|---|---|---|---|---|---|
| **California Achievement Test** | | | | | A. G. C. T. Equiv. I.Q. | | Revised Beta I.Q. |
| Form: Elem. Inter. | Grade | | | Grade | Factors | %ile | Comments BORDERLINE |
| 1. Reading Vocabulary | | 5. Mech. of Eng. | | | Verbal | | |
| 2. Reading Comprehension | | 6. Spelling | | | Numerical | | |
| Reading Average | | Language Average | | | Spatial | | : WAIS ADMINISTERED IN 2/82. |
| 3. Arithmetic Reasoning | | TOTAL GRADE PL. | | | Other Tests : RESULTS IN PSYCHOLOGIST REPORT. | | |
| 4. Arithmetic Fundamentals | | WRAT Arithmetic | | N.C | | | |
| Arithmetic Average | | WRAT Reading | | | | | |
| Read. & Arith. Average | | WRAT Average | | | | | |

CDC 128M (2/76)

Case 5:08-cv-01034-RMW   Document 1-2   Filed 03/24/2008   Page 45 of 100

## 1. INFORMATION

Discontinue after 5 consecutive failures.

| # | Item | | Score 1 or 0 |
|---|------|---|---|
| 1. | Flag | R W B | 1 |
| 2. | Ball | Rd | 1 |
| 3. | Months | 12 | 1 |
| 4. | Thermometer | takes temp | 1 |
| 5. | Sun | no. | 0 |
| 6. | Presidents | J F K, Robt K., M.L. King, Ford | 0 |
| 7. | Weeks | DK | 0 |
| 8. | Armstrong | " | 0 |
| 9. | Panama | " | 0 |
| 10. | Labor Day | | |
| 11. | Brazil | | |
| 12. | Hamlet | | |
| 13. | Civil War | | |
| 14. | Earhart | | |
| 15. | Clothes | | |
| 16. | Italy | | |
| 17. | King | | |
| 18. | Genesis | | |
| 19. | Sahara | | |
| 20. | Relativity | | |
| 21. | Yeast | | |
| 22. | Senators | | |
| 23. | Paris | | |
| 24. | Blood vessels | | |
| 25. | Temperature | | |
| 26. | Curie | | |
| 27. | Population | | |
| 28. | Koran | | |
| 29. | Faust | | |

**RT**

Note: Be sure to include scores for Items 1-4 in Total.

**Total** Max=29 **4**

## 2. PICTURE COMPLETION

Discontinue after 5 consecutive failures.

| # | Item | | Score 1 or 0 |
|---|------|---|---|
| 1. | Door | | 1 |
| 2. | Tennis | | 1 |
| 3. | Frog | | 1 |
| 4. | Playing card | DK | 0 |
| 5. | Car | | 1 |
| 6. | Pitcher | holder | 0 |
| 7. | Glasses | | 1 |
| 8. | Pliers | | 1 |
| 9. | Boat | DK | 0 |
| 10. | Beach | | 1 |
| 11. | Mirror | | 1 |
| 12. | Crab | mouth | 0 |
| 13. | Violin | | 1 |
| 14. | Sun | | 1 |
| 15. | Watch | | 1 |
| 16. | Leaf | DK | 0 |
| 17. | Man | " | 0 |
| 18. | Horse | person | 0 |
| 19. | Female profile | DK | 0 |
| 20. | Woodpile | " | 0 |

**Total** Max=20 **11**

## 3. DIGIT SPAN

Discontinue after failure on BOTH TRIALS of any item.
Administer BOTH TRIALS of each item, even if subject passes first trial.

| | DIGITS FORWARD | Pass-Fail | Score 2, 1, or 0 | | DIGITS BACKWARD * | Pass-Fail | Score 2, 1, or 0 |
|---|---|---|---|---|---|---|---|
| 1. | 5 - 8 - 2 | P | 2 | 1. | 2 - 4 | P | 2 |
| | 6 - 9 - 4 | P | | | 5 - 8 | P | |
| 2. | 6 - 4 - 3 - 9 | F | 0 | 2. | 6 - 2 - 9 | P | 2 |
| | 7 - 2 - 8 - 6 | F | | | 4 - 1 - 5 | P | |
| 3. | 4 - 2 - 7 - 3 - 1 | | | 3. | 3 - 2 - 7 - 9 | F | 0 |
| | 7 - 5 - 8 - 3 - 6 | | | | 4 - 9 - 6 - 8 | F | |
| 4. | 6 - 1 - 9 - 4 - 7 - 3 | | | 4. | 1 - 5 - 2 - 8 - 6 | | |
| | 3 - 9 - 2 - 4 - 8 - 7 | | | | 6 - 1 - 8 - 4 - 3 | | |
| 5. | 5 - 9 - 1 - 7 - 4 - 2 - 8 | | | 5. | 5 - 3 - 9 - 4 - 1 - 8 | | |
| | 4 - 1 - 7 - 9 - 3 - 8 - 6 | | | | 7 - 2 - 4 - 8 - 5 - 6 | | |
| 6. | 5 - 8 - 1 - 9 - 2 - 6 - 4 - 7 | | | 6. | 8 - 1 - 2 - 9 - 3 - 6 - 5 | | |
| | 3 - 8 - 2 - 9 - 5 - 1 - 7 - 4 | | | | 4 - 7 - 3 - 9 - 1 - 2 - 8 | | |
| 7. | 2 - 7 - 5 - 8 - 6 - 2 - 5 - 8 - 4 | | | 7. | 9 - 4 - 3 - 7 - 6 - 2 - 5 - 8 | | |
| | 7 - 1 - 3 - 9 - 4 - 2 - 5 - 6 - 8 | | | | 7 - 2 - 8 - 1 - 9 - 6 - 5 - 3 | | |

**Total Forward** Max=14 **2**

*Administer DIGITS BACKWARD even if subject scores 0 on DIGITS FORWARD.

**Total Backward** Max=14

Borneo Brown C 77539

| | Forward | | Backward | | Max=28 Total |
|---|---|---|---|---|---|
| | 2 | + | 4 | = | 6 |

2

## 4. PICTURE ARRANGEMENT

| Arrangement | Order | Correct or *Acceptable Order* | Score (Circle) | Arrangement | Order | Correct or *Acceptable Order* | Score (Circle) |
|---|---|---|---|---|---|---|---|
| 1. House  60" | 1. cap 2. | CAP | 0 1 **②** | 6. Escape  90" | thun | HUNT | **⓪** 2 |
| 2. Flirt  60" | jnate | JANET *JNAET or AJNET* | **⓪** 1 2 | 7. Hill  90" | helps | HELPS | 0 **②** |
| 3. Romeo  60" | shade | SHADE | 0 **②** | 8. Fish  90" | angler | ANGLER or ARNGLE *AGNLER* | 0 1 **②** |
| 4. Louie  60" | argues | ARGUES | 0 **②** | 9. Robber  120" | lunch | LUNCH | **⓪** 2 |
| 5. Enter  90" | opens | OPENS *OENSP* | 0 1 **②** | 10. Taxi  120" | saleum | SAMUEL or AMUELS *SALMUE* | **⓪** 1 2 |

/10

Note: Be sure to include scores for items 1-5 in Total.

**Total** | **10** | Max=20

Note: Be sure to include scores for items 1-5 in Total.

## 5. VOCABULARY    Discontinue after 5 consecutive failures.

| | | Score 2, 1, or 0 |
|---|---|---|
| 1. Bed | sleep on | 2 |
| 2. Ship | sleep. catch a ship, put box on ship | 0 |
| 3. Penny | s- U can spend | 2 |
| 4. Winter | cold | 1 |
| 5. Breakfast | s. to eat | 1 |
| 6. Repair | fix my car | 1 |
| 7. Fabric | kind of spray for hair | 0 |
| 8. Assemble | DK | 0 |
| 9. Enormous | " | 0 |
| 10. Conceal | knife is concealed Q concealed | 0 |
| 11. Sentence | sentenced for 1 yr. Q judge s. U to jail | 1 |
| 12. Consume | DK | 0 |
| 13. Regulate | " | 0 |
| 14. Terminate | " Do this work | 0 |
| 15. Commence | DK | 0 |
| 16. Domestic | " | 0 |
| 17. Tranquil | | |
| 18. Ponder | | |
| 19. Designate | | |
| 20. Reluctant | | |
| 21. Obstruct | | |
| 22. Sanctuary | | |
| 23. Compassion | | |
| 24. Evasive | | |
| 25. Remorse | | |
| 26. Perimeter | | |
| 27. Generate | | |
| 28. Matchless | | |
| 29. Fortitude | | |
| 30. Tangible | | |
| 31. Plagiarize | | |
| 32. Ominous | | |
| 33. Encumber | | |
| 34. Audacious | | |
| 35. Tirade | | |

/8

Note: Be sure to include scores for Items 1-3 in Total.

Barnett, Kerwin   C. 7755

3

**Total** | **8** | Max=70

## 6. BLOCK DESIGN   Discontinue after 3 consecutive failures.

| Design | Time | Pass-Fail | Score (Circle the appropriate score for each design.) | | | |
|--------|------|-----------|------|------|------|------|
| 1.  60" | 1  26 | P | (2) | | | |
|        | 2     |   | 0    | 1    | | |
| 2.  60" | 1  30 | P | (2) | | | |
|        | 2     |   | 0    | 1    | | |
| 3.  60" | 16 | P | 0 | 16-60 (4) | 11-15 5 | 1-10 6 |
| 4.  60" | 27 | P | 0 | 16-60 (4) | 11-15 5 | 1-10 6 |
| 5.  60" | 56 | P | 0 | 21-60 (4) | 16-20 5 | 11-15 6 / 1-10 7 |
| 6.  120" | 71 | P | 0 | 36-120 (4) | 26-35 5 | 21-25 6 / 1-20 7 |
| 7.  120" | 120 | (Fine) | (0) → no conceptualization | 61-120 4 | 46-60 5 | 31-45 6 / 1-30 7 |
| 8.  120" | 120 | inc. | (0) | 76-120 4 | 56-75 5 | 41-55 6 / 1-40 7 |
| 9.  120" | 94 | F | (0) center block solid white | 76-120 4 | 56-75 5 | 41-55 6 / 1-40 7 |

Max=51

Total  2∂

## 7. ARITHMETIC    Discontinue after 4 consecutive failures.

| Problem | | Response | Score 1 or 0 | Problem | | Response | Time | Score (Circle) | | |
|---------|--|----------|--------------|---------|--|----------|------|------|--|--|
| 1. | 15" | | 1 | 10. | 60" | | | 0 | 11-60 1 | 1-10 2 |
| 2. | 15" | | 1 | 11. | 60" | | | 0 | 11-60 1 | 1-10 2 |
| 3. | 15" | $9 | 1 | 12. | 60" | | | 0 | 11-60 1 | 1-10 2 |
| 4. | 15" | $4 | 1 | 13. | 60" | | | 0 | 16-60 1 | 1-15 2 |
| 5. | 30" | $1.25 | 0 | 14. | 120" | | | 0 | 16-120 1 | 1-15 2 |
| 6. | 30" | DK 17" | 0 | | | | | | | |
| 7. | 30" | " 16 " | 0 | | Max=19 | | | | | |
| 8. | (30") → | | 0 | | Total | 4 | | | | |
| 9. | 30" | | | | | | | | | |

Note: Be sure to include scores for Items 1-9 in Total.

BARNETT, DENNIS
C. 775 39

4

(rows of digit-symbol test responses, shown inverted)

**10. DIGIT SYMBOL**

| SYMBOL | — | ⊤ | ⊏ | ⊔ | O | V | X | = |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |

SCORE 29

| 11. SIMILARITIES  Discontinue after 4 consecutive failures. | | Score 2, 1, or 0 |
|---|---|---|
| 1. Orange—banana | more protein | 0 |
| 2. Dog—lion | bark | 0 |
| 3. Coat—suit | DK | 0 |
| 4. Boat—automobile | can drive | 1 |
| 5. Eye—ear | see + hear | 0 |
| 6. Button—zipper | close up your jacket | 1 |
| 7. North—west | DK | 0 |
| 8. Egg—seed | grow | 0 |
| 9. Table—chair | sit down + eat at table | 1 |
| 10. Air—water | breathe | 0 |
| 11. Poem—statue | read about status | 0 |
| 12. Work—play | not | 0 |
| 13. Fly—tree | DK | 0 |
| 14. Praise—punishment | | |
| | Barnett, Denis  C7753 | Max=28 |
| 5 | | Total  3 |

/3

## 8. OBJECT ASSEMBLY    Give entire test to all subjects

| Object | Time | Score (Circle appropriate score for each object.) |
|---|---|---|

| Object | Time | | | | | | 21-120 | 16-20 | 11-15 | 1-10 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Manikin  120" | 40 | 0 | 1 | 2 | 3 | 4 | (5) | 6 | 7 | 8 | perfect assembly |
| 2. Profile  120" | 63 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 36-120 (9) 10  26-35 11  21-25 12  1-20  perfect assembly |
| 3. Hand  180" | 140 | little + middle fingers → 0 1 2 3 4 (5) 6 → | | | | | 51-180 7  36-50 8  26-35 9  1-25 10  perfect assembly | | | | |
| 4. Elephant  180" | 32 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 51-180 8  31-50 (9)  21-30 10  1-20 11  perfect assembly |

14

**Total    Max=41    28**

## 9. COMPREHENSION    Discontinue after 4 consecutive failures.

| | | Score 2, 1, or 0 |
|---|---|---|
| 1. Clothes | to look clean | 2 |
| 2. Envelope | mail it | 2 |
| *3. Foods | so we can eat it | 0 |
| *4. Child labor | so kids can be helped | 0 |
| 5. Deaf | some kind of disease | 0 |
| 6. Borrow | ~~call J. D.~~ borrow more from bank | 2 |
| 7. Movies | call F. D. | 1 |
| 8. License | so they can get married | 0 |
| 9. Taxes | DK | 0 |
| 10. Forest | nailer for help | 0 |
| 11. Prescription | won't give it to you w/o pres. against law | 0 |
| 12. Iron | | |
| 13. Land | | |
| 14. Brooks | | |
| 15. Swallow | | |
| 16. Press | | |

7

*If the subject replies with only one idea, ask for a second response. Rephrase the test item appropriately, saying, "Tell me another reason why...."

BARRETT, DENNIS
C-7539

**Total    Max=32    7**

6

## Clark Adaptive Support Evaluation: [ ] Phase III Initial [ ] Phase IV Follow-up

Sources Utilized: [X] Inmate [X] C-File [X] Medical Record
[ ] Teacher [X] Correctional Officer [ ] Employer [X] Other: Correctional Counselor

**Results :** [ ] **DD0** [X] **NDD** [ ] **DD1** [ ] **D1A** [ ] **DD2** [ ] **DD3**

*POSSIBLE* developmental disability before age 18? [X] YES or UNKNOWN [ ] NO

Primary Language English     Ethnicity Caucasian     Marital Status

For DD1, D1A, DD2 and DD3, summary of adaptive support needs:
For NDD and DD0, justification for exclusion:

I/m requested a Clark re-evaluation via a 602. Although he has a past diagnosis of mild mental retardation, his adaptive functioning is good. Observation of Mr. Barnett indicates that his hygiene is good and he keeps his housing area fairly neat and clean. He is able to self-advocate as evidenced by writing multiple 602s and submitting complicated legal documents in the past. He seems to have some difficulty in articulating himself, yet comprehends questions posed to him. The wing C.O. reported that Mr. Barnett follows instructions, maintains his hygiene, and interacts appropriately with other inmates on the wing. Mr. Barnett's last evaluation stated that if his limitations begin to compromise his functioning he should be re-evalua however his functioning does not appear to have decli

Clinician
Title (print) Psychologist     Signature Sanchez-Parker, Psy.D.     Date 9/15/04

If above is unlicensed, Licensed Clinician reviewer Signature: D. Sweeney PhD     Date 9/15/04

The following to be completed by Subject in Subjects own hand writing:

[X] I/m unable to complete due to institutional lockdown.
Name  I/M seen at cell door.     CDC#     Date of Birth:

Current Assignment:     City, State of Birth:

$100 - $35 = _____     If it is 2:45 PM, what time will it be in 15 minutes? _____     What time is it? _____

Read: | An inmate's fingernails shall not extend more than ¼ inch beyond the tips of the fingers.

**MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES**

CDC Form MH 3 [12/12/03]

Confidential Client/Patient Information
See W & I Code, Section 5328

File under "DATA" in the MENTAL HEALTH section of the UNIT HEALTH RECORD

Last Name:  Barnett     First Name: Dennis     MI:

CDC #  C77539     DOB 12/20/59

State of California, Department of Corrections — Institution: _____ CMF _____    Page Number 3 of 4
CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams

## D.    SELF-DIRECTION
### Level of reliance on others for basic needs

| | Discriminating factors (not just verbatim answers) |
|---|---|
| 1. How do you make purchases from the canteen?<br>2. What kinds of things can you cook for yourself?<br>3. What do you do if you do not like your assignment (work, school?)<br>4. What do you do if you do not receive a package sent to you?<br>**When outside prison:**<br>5. Who took care of your money?<br>6. Who bought groceries and cooked?<br>7. Do you drive a car? Motorcycle?<br>8. Do you have a driver's license?<br>9. Have you owned a car?<br>10. How do you find which bus to take?<br>11. Have you ever received assistance from a Regional Center? | C-file indicates I/M had a drivers license. |

## E.    SELF-ADVOCACY/USE OF INMATE RESOURCES
### Level of naiveté regarding prison culture, routine, available resources; adherence to rules, schedule

| | Discriminating factors (not just verbatim answers) |
|---|---|
| 1. What is a 602? Have you filed one? How much does it cost to file?<br>2. What do you do when you feel sick?<br>3. What do you do when you hear an alarm? Why would you do this?<br>4. What do the yellow lines mean?<br>5. If you see an enemy on the yard, what would you do?<br>6. What would you do if the plumbing in your cell or dorm doesn't work?<br>7. What happens at classification hearings?<br>8. What is a Correctional Counselor supposed to do?<br>9. What does a Parole Agent do?<br>10. What are conditions of parole? | I/m has written multiple 602s located in c-file. He spends quite a bit of time in the law library. Per his last clerk evaluation, he had filed a "complicated legal document" and was able to explain the document in detail. I/M is aware of the functions of his correctional counselor. |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES<br><br>CDC Form MH 3 [12/12/03]<br><br>Confidential Client/Patient Information<br>See W & I Code, Section 5328 | File under "DATA" in the MENTAL HEALTH section of the UNIT HEALTH RECORD | Last Name: Barnett    First Name: Dennis    MI:<br><br>CDC #: C77539    DOB 12/20/59 |

State of California, Department of Corrections – Institution: _CMF_    Page Number 1 of 4
CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams

## Clark Adaptive Support Evaluation

Ethnicity _Caucasian_ Primary Language _English_    Marital Status _Single_

Sources Utilized:  ☒ Inmate    ☐ C-File    ☒ Medical Record    ☐ Teacher
☒ Correctional Officer    ☐ Employer    ☐ Other _Theim, PhD_
_c/o Leary_

Results of this evaluation:  ☐ DD0  ☒ NDD  ☐ DD1  ☐ D1A  ☐ DD2  ☐ DD3

Summary of findings and justification for above designation: Mr. Barnett was evaluated on 10/30/02 at his CCI' Sukouch request per the Clark Remedial Plan. Inmate is reportedly mildly mentally retarded and it is reported that his FSIQ is 68. Inmate demonstrates cognitive deficits but is able to function well in the institution. He has functioned as his own counsel. He has recently filed legal papers and is able to talk about the issues with knowledge and accuracy. He does not get confused or disoriented. He self directs for self care and activities of daily living. He does not socialize with others and appears to get paranoid but this seems mental illness derived. He is currently on a Keyhea and recenly got antipsychotic meds. When he does interact with others he appears to do so appropriately. There are no victimization concerns. If his deficits prove to be interfering with his daily functi— he should even be referred for an education.

Interviewer, Title (print) _C. Matteson, PhD psychologist_  Signature _Cynthia Matteson Psych_  Date _10/30/02_

## A. VERBAL COMMUNICATION / MEMORY

*Quality and accuracy of narrative speech, e.g., speaks in full sentences, uses details in describing stories, displays sense of humor, appropriate small talk; receptive capacity; attention span; short and long term memory*

| Questions | Summary of findings |
|---|---|
| What is your birthdate?  *WRNA yes* | Sources used: ☐ Inmate responses ☐ Staff comments ☐ Chart review |
| Where were you born? | Summary of findings |
| What was your last address outside of prison? | — yes |
| Who do you live with in the community? | memory is O.k |
| When is your release date? | verbal communicato |
| What will you do when you get released (if long sentence, what are your plans while you are in prison)? | is good |
| How well do you follow instructions? | long documents appr mild Bett cognitive illness |
| How easy is it for you to pay attention in a classroom? | Referred by CCI Sinkouch possible MR Keyhea until 9/1/03 |
| What did you have for dinner last night? | FSIQ=68 95 lbs   GAF 60   H-314   Axis II maybe R |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: Barnett | First Name: | MI: |
|---|---|---|---|---|
| CDC Form MH 3 [11/02/00] | Inpatient | CDC # C77539 | DOB 12-20-59 | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Outpatient | Arrival date ____ | | |

State of California, Department of Corrections – Institution: CMF

Page Number 2 of 4

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams

## B. ACADEMIC/WORK

*Degree of success in school/work settings; ability to read/write basic correspondence, such as 602, sick call, letters home*

| | |
|---|---|
| 1. How far did you go in school?<br>2. What kind of grades did you get?<br>3. Were you in special education classes?<br>4. Do you have any special learning problems?<br>5. What type of program do you have in prison?<br>6. What kinds of jobs have you had (including in prison)?<br>7. What is the longest you worked at one place?<br>8. What do you enjoy reading (magazines, newspapers, books)?<br>9. Can you please read this paragraph? (See back page. Present 4th grade paragraph first. If necessary, present 2nd grade.)<br>10. Please write your name, CDC# and date (on the last page)?<br>11. Please write the following:<br>The apple is red.<br>Winter is the coldest season of the year. | Sources used: ☐ Inmate responses  ☐ Staff comments  ☐ Chart review<br>Summary of findings<br><br>12th grade  dropped out<br>Could not  Special education<br>read or write  for MR.<br><br>'84 CMC- school learned to read and<br>hopes  write. "Can't spell every<br>to get job  thing so I look it up in<br>and pay money  the dictionary."<br>Just filed legal brief + he talks<br>about it with detail and accuracy. Has<br>represented himself. Reads law books. |

## C. SELF-CARE

*Current presentation, e.g. unkempt, strong body odor; ADLs prompted or self-initiated; current cleanliness of cell; chores prompted or self-initiated; basic awareness of health maintenance*

| | |
|---|---|
| 1. Who tells you when to take a shower?<br>2. How often do you brush your teeth?<br>3. Do you sometimes need reminders to shower or brush your teeth?<br>4. How do you make sure you have clean sheets and clothes?<br>5. Do you share chores with your cellie? Who does more?<br>6. What are some things you can do when another inmate is coughing and sneezing? | Sources used: ☐ Inmate responses  ☐ Staff comments  ☐ Chart review<br>Summary of findings<br><br>Cell - clean - share responsibilities<br><br>no prompts<br>Self directed<br>clean  laundry ok |

| MENTAL HEALTH<br>INTERDISCIPLINARY PROGRESS NOTES<br><br>CDC Form MH 3 [11/02/00]<br><br>Confidential Client/Patient Information<br>See W & I Code, Section 5328 | LEVEL OF CARE<br><br><br><br>Inpatient<br><br>Outpatient | Last Name:  First Name:  MI:<br><br>Barnett<br><br>CDC # C77539  DOB |

State of California. Department of Corrections – Institution: **CMF**   Page Number 3 of 4

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:   All Staff, Clinicians, Treatment Teams

## D. SELF-DIRECTION

*Level of reliance on others for basic needs*

| | |
|---|---|
| 1. Can you read the time? (Ask to read watch or clock) | Sources used: ☐ Inmate responses ☐ Staff comments ☐ Chart review |
| 2. Let's say it's 2:45. Someone tells you to come back in 15 minutes. What time do you come back? | **Summary of findings** |
| | 3:00 |
| 3. If you use a dollar to buy something that costs $.35, how much change should you get back? | .65 cents |
| 4. Who took care of your money when you were outside? | Dad was primary care taker |
| 5. What kinds of things can you cook for yourself? | and directed inmate. Inmate |
| 6. Did you do your own laundry outside? | no then cold not do it on his |
| 7. Do you have a driver's license? | own without prompting. Now he |
| 8. How do you know which bus to take? | seems to orent well and quickly |

## E. SELF-ADVOCACY/USE OF INMATE RESOURCES  to new situations without prompts.

*Level of naiveté regarding prison culture, routine, available resources; adherence to rules, schedule*

| | |
|---|---|
| 1. Do you know what a 602 is? Have you filed one? How much does it cost to file? | Sources used: ☐ Inmate responses ☐ Staff comments ☐ Chart review |
| 2. What do you do when you feel sick here? | **Summary of findings** |
| 3. What do you do when you hear an alarm? Why should you do this? | Inmate knows the finer points of institutional rules and procedures. |
| 4. What do the yellow (or red) lines on the yard mean? | He was able to explain what |
| 5. If you recognize an inmate on the yard that you consider an enemy, what should you do? | is happening with his legal case |
| 6. What should you do if the plumbing in your cell or dorm doesn't work? | as well as his classification |
| 7. What happens at your classification (annual review) hearings? Do you understand what they're talking about? | problems. He knows what led to the problem and what steps had to be taken |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| CDC Form MH 3 [11/02/00] | Inpatient | Barrett | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Outpatient | CDC # C-77539 | | DOB _____ |

State of California, Department of Corrections  –  Institution: _CMF_          Page Number 4 of 4

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:          All Staff, Clinicians, Treatment Teams

## F.  SOCIALIZATION

*Ability to interact socially, e.g. small talk, humor; phone/written contact with friends/family; nature of interactions with peers/staff (e.g. taken advantage of; prompted by other inmates to break rules); ability to cope with stressors of prison; ability to control anger; use of staff to resolve problems (review pattern of 128s and 115s)*

| | |
|---|---|
| 1.  Tell me about your family. What are/were your responsibilities in your family? | Sources used: ☐ Inmate responses ☐ Staff comments ☐ Chart review |
| 2.  How do you keep in contact with them now? | **Summary of findings** |
| 3.  Do you have one or more best friends? Have you ever? | Brother |
| 4.  Is it usually easy or hard for you to make friends? | Letters |
| 5.  Are people usually mean to you or nice? | Inmate interacts appropriately |
| 6.  What do you do if someone keeps bugging you? | with other both inmates and |
| 7.  Do you get along with other inmates? | custody. C/O Gray reports no |
| 8.  What is a 115? Have you received any? | problems although I/m reports |
| 9.  Have other inmates pressured you to get or do things for them (money, sex, canteen)? If so, what did you do (or what would you do if . . .)? | paranoia in social interactions + tends to keep to himself. This appears to be |
| 10.  Have you gotten into any verbal or physical fights in prison? If so, what happened? | driven by mental illness not cognitive deficits. |

## G.  LEISURE TIME

*Ability to initiate/participate in recreational activities; use of time on yard and in cellblock*

| | |
|---|---|
| 1.  Do you have a hobby? | Sources used: ☐ Inmate responses ☐ Staff comments ☐ Chart review |
| 2.  Have you ever played sports (outside of P.E. class)? | **Summary of findings** |
| 3.  How do you pass the time (in cell, at home)? | Work |
| 4.  What do you do with your time on the yard? | yard - no - uncomfortable around people |
| 5.  Do you keep up with the news? How? | Dayroom - T.V.     legal work |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name:            First Name:            MI: |
|---|---|---|
| CDC Form MH 3 [11/02/00] | Inpatient | Barnett |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Outpatient | CDC # __C77539__ DOB _____ |

(detach this page before filing)

## Reading Samples

**4**

An inmate's fingernails shall not extend more than ¼ inch beyond the tips of the fingers.

Nails shall be neat and clean. Female inmates may wear only clear nail polish.

*inmate read + understood*

**2**

(1) Each inmate shall be issued:

   (A) Work shoes, one pair.

   (B) Sheets, two.

   (C) Pillowcase, one.

   (D) Towels, two.

   (E) Blankets, two.

*When Der is the cold season Apparl isRed*

*inmate wrote*

*Barnett C77535*



C A L I F O R N I A   D E P A R T M E N T   O F

# Mental Health

### P a t t o n   S t a t e   H o s p i t a l

3102 East Highland Avenue, Patton, CA 92369
(909) 425-7642

Date: December 11, 2001

Re: BARNETT, Dennis Ray
PAT#: 149447-5

Ruth McVeigh
Attorney At Law
4236 Terrace Street
Oakland, CA.   94611

ATTENTION:  Ms. McVeigh

___XX___    Attached is the information you requested on the above named person.

_____    The records on the above person were sent to _____
State Hospital on _____ and we are forwarding your request to
them for handling.

_____    We are unable to identify the above named person.  Please submit any
other names, birthdate, date of hospitalization, Social Security number.

_____    Records have been destroyed.  Enclosed is the only information
available.

_____    All patient information is confidential.  Any request must be accompanied
by an authorization to release information, signed by the patient.

_____    Comments:

Sincerely,

*Joni Hodges for*

Gary G. Gleason, Medical Records Director
Health Information Management

GG/tgh

**DO YOUR PART TO HELP CALIFORNIA SAVE ENERGY**
For energy saving tips, visit the DMH website at
www.dmh.cahwnet.gov

State of California - Health and Welfare Agency

Department of Mental Health

**ASSESSMENT/CONFERENCES/EVALUATIONS/REPORTS**

Patton State Hospital

MH 5728 (New 2/88)

---

Title: COURT REPORT            PC 1370            Date: FEBRUARY 18, 2000

---

The Honorable John Garibaldi
Santa Clara County Superior Court
190 West Hedding Street
San Jose, CA 951120

**RE: BARNETT, DENNIS RAY**

Department: 29a
Court Number: 199321
CII: A06370830
Maximum Commitment Date: May 21, 2002
Court Report Due: Special Staffing

Dear Judge Garibaldi:

This report is pursuant to Penal Code Section 1370(b)(1).

## FORENSIC DATA:

Mr. Dennis Ray Barnett is a 40-year-old, single, Caucasian male, born December 20, 1959, who was committed by the Superior Court of Santa Clara County to the California Department of Mental Health on May 21, 1999. He was originally admitted to Atascadero State Hospital on June 22, 1999, pursuant to PC 1370, mentally incompetent to stand trial. He was administratively transferred to Patton State Hospital on July 20, 1999, under PC 1370 for continued care and treatment. He is charged with the alleged violation of PC 211/212.5, secondary degree robbery; and PC 245(a)(1), assault with a deadly weapon likely to produce great bodily injury.

## CURRENT PSYCHIATRIC DIAGNOSES:

| AXIS I: | 295.70 | P | Schizoaffective Disorder, Depressed Type |
|---------|--------|---|------------------------------------------|
|         | 303.90 | S | Alcohol Dependence |
| AXIS II: | V62.89 | | Borderline Intellectual Functioning |
| AXIS III: | | | History of Head Trauma |
|           | | | Diabetes Mellitus |
| AXIS IV: | | | Problems Related To Interaction with the Legal System/Crime Incarceration |
| AXIS V: | | | Current GAF: 50   Highest GAF Past Year: 30 |

## CURRENT PHYSICAL PROBLEMS/ALERTS/ALLERGIES:

History of head trauma. Diabetes Mellitus. No known allergies.

Page 1 of 3

---

COURT REPORT
PC 1370

CONFIDENTIAL PATIENT INFORMATION
SEE W&I CODE SECTION 5328

BARNETT, DENNIS RAY
PAT 149447-5
PROGRAM IV   UNIT 35

State of California - Health and Welfare Agency

ASSESSMENT/CONFERENCES/EVALUATIONS/REPORTS

MH 5728 (New 2/88)

Department of Mental Health

Patton State Hospital

| Title: COURT REPORT | PC 1370 | Date: FEBRUARY 18, 2000 |
| --- | --- | --- |

## CURRENT MEDICATIONS:

1. Glucotrol 10 mg. tablet orally twice daily.
2. Glucophage 850 mg. tablet orally three times a day with meals.
3. Prozac 20 mg. capsule orally once daily in the morning.
4. Zyprexa 20 mg. tablet orally once daily.

## CLINICAL PROGRESS/RATIONALE FOR RECOMMENDATION:

Mr. Barnett was initially found to be mentally incompetent to stand trial based on the evaluation conducted by Leonard J. Donk, Ph.D., M. B. Jones, Ph.D., and C. M. Patterson, Ph.D., court-appointed alienist. All three examiners concluded that Mr. Barnett was incompetent to stand trial and unable to cooperate with an attorney in the preparation of a defense. According to Dr. Donk's report dated February 2, 1999, Mr. Barnett "is not ready to fully understand and appreciate the nature of the legal proceedings taken against him," due to his mental illness. He further indicated that Mr. Barnett demonstrated cognitive deficits that impeded competency. Mr. Barnett was subsequently admitted to Atascadero State Hospital.

In Atascadero State Hospital's report to the court dated August 27, 1999, it was the opinion of the Interdisciplinary Treatment Team that Mr. Barnett remained incompetent to stand trial. It was therefore their recommendation that he be retained and treated in a forensic hospital due to the severity of his mental illness. He was subsequently transferred to Patton State Hospital on July 20, 1999.

Since his admission to Patton State Hospital, Mr. Barnett has been provided with a biopsychosocial rehabilitation treatment plan aimed at the reduction of symptoms associated with his mental illness and restoration of competency. He has been provided with court education and psychotherapy groups, individual psychotherapy, rehabilitation activities, and medication management. Thus far, his response to treatment has been good in that he seems to be stabilizing on medication and is able to benefit from treatment groups. His knowledge of the court-related material has increased, as well as his cooperation level.

On February 18, 2000, the Interdisciplinary Treatment Team met with Mr. Barnett for an expedited review. This expedited review was completed at Mr. Barnett's request to be evaluated in lieu of transfer to Napa State Hospital. During the evaluation, Mr. Barnett presented with an agitated mood and appropriate affect. He was cooperative with the interview and remembered nearly all of the court-related material, including the information that he had previously forgotten at his last staffing dated January 21, 2000. Upon examination, Mr. Barnett was able to demonstrate an understanding of the charges taken against him, court procedures, the roles and functions of the various courtroom officials, the available pleas and the possible consequences of each plea, the plea bargain process, and the two types of trials. In addition, he was able to demonstrate an ability to cooperate with his attorney in a rational manner in preparing and conducting a defense on his own behalf.

Page 2 of 3

| COURT REPORT | CONFIDENTIAL PATIENT INFORMATION | BARNETT, DENNIS RAY |
| --- | --- | --- |
| PC 1370 | SEE W&I CODE SECTION 5328 | PAT 149447-5 |
| | | PROGRAM IV   UNIT 35 |

State of California - Health and Welfare Agency

Department of Mental Health

**ASSESSMENT/CONFERENCES/EVALUATIONS/REPORTS**

Patton State Hospital

MH 5728 (New 2/88)

---

Title: COURT REPORT          -          PC 1370          Date: FEBRUARY 18, 2000

---

CLINICAL PROGRESS/RATIONALE FOR RECOMMENDATION: (Continued)

It is therefore the opinion of the Interdisciplinary Treatment Team that Mr. Barnett is mentally competent to stand trial and should be returned to court.

**RECOMMENDATION TO COURT:**

Return to court to stand trial pursuant to PC 1372 as having been restored to mental competence. We have considered the possible recommendation of PC 1372(e), and do not believe a PC 1372(e) recommendation is indicated at this time.

Kelly-Jo Chastain-Carlton, P.S.W.
Staffing Recorder

David H. Lee, M.D.
Staff Psychiatrist

**ADMINISTRATIVE REVIEW:**

Alan Thomason
Program Assistant

Sarla Gnanamuthu, M.D.
Medical Director

cc:  Original-Chart; Court; Conrep; District Attorney; Attorney of Record; Mental Health Director; Legal Records; Pharmacy; Program File/DR:2-28-00/DT:2-28-00/cjs/Z568158727/MAILED: 3-3-00

Page 3 of 3

---

COURT REPORT
PC 1370

CONFIDENTIAL PATIENT INFORMATION
SEE W&I CODE SECTION 5328

BARNETT, DENNIS RAY
PAT 149447-5
PROGRAM IV   UNIT 35



# ABATOR CONSULTANTS

Leonard J. Donk, M.A., Ph.D.
Licensed Psychologist
#PSY9064

20111 Stevens Creek Blvd., Suite 250 • Cupertino, California 95014 • (408) 366-9910 • Fax (408) 366-9915

PD
sure
Beatty

February 2, 1999

CGB

(ENDORSED)
FILED

FEB 04 1999

STEPHEN V. LOVE
Chief Executive Officer,
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

The Honorable John Garibaldi
Judge of the Superior Court
Department 29-A
Criminal Court Annex
190 West Hedding Street
San Jose, CA 95110

RE:    Barnett, Dennis, Case #199321  CEN # 97022318
       Custody Location:  Main Jail North

SUBJECT:    Appointment as Medical Examiner Under Section 1368 of the Penal
Code determining mental competence.

Dear Judge Garibaldi:

BACKGROUND:
Thank you for your referral of December 28, 1998 of Mr. Barnett to us.  We received the
referral on 1/5/99.  It is our understanding that you wish a mental competency
examination of this defendant under Section 1368 of the Penal Code which reads:  "A
defendant is mentally incompetent for purposes of this chapter if, as a result of a mental
disorder, he/she is unable to understand the nature of the proceedings taken against
him/her and to assist counsel in the conduct of his/her defense in a rational manner."

Mr. Barnett is approximately 5'6" tall, weighs 150-170 pounds, has long, thinning,
blondish-gray hair that is somewhat straggly and a full beard on his face that is trimmed
to about 1/2" length in some places and  to about 1" to 1.5" at others.  He was
interviewed in the Santa Clara County Jail on the evening 1/21/99 at approximately 8:30
p.m. and concluded at midnight.  He is housed on charges of PC 211/212.5 (C) JPC 245
(A) (1); with "7 strike" priors.  His public defender is Carl Beatty.  Mr. Barnett was the
only person who was interviewed and my evaluation of him consisted of that interview,
the performance of the Mental Status Examination and psychological testing.  I did
inform him of the purpose of the interview and stated to him that the information from
the psychological examination would be part of the public record and would not be
confidential.  I asked him if he understood and he stated that he did not know why he was
in jail and that he thought that "my mother put me here because we were arguing.  He
appeared to comprehend much of what we discussed and talked about, but did not seem
to comprehend why he was in jail and the charges against him.

The records which I have in my possession are your order dated December 28, 1998; a cover sheet on the case from Connie who faxed us a police report dated 6/19/97 from Officer Periu reporting an assault with a deadly weapon, a theft with priors and a parole violation consisting of five pages; a physiological specimen request of Mr. Barnett in which a blood sample was taken with Mr. Barnett being cooperative; eight pages of a complaint listing the people of the State of California versus Dennis Ray Barnett, dated September 29, 1997, where it charged Mr. Barnett with one count of second degree robbery, a felony during which a deadly and dangerous weapon was used, a second count of assault with a deadly weapon, a felony in which a dangerous and deadly weapon was used and then a listing of his 14 strikes out of 21 priors.

## CURRENT PROBLEM:

Mr. Barnett's problem is in synopsis as the following: On 6/19/97, at approximately 17:55 hours, an assault with a deadly weapon, theft with prior conviction and parole violation incident occurred at 930 Blossom Hill Road (K-Mart). The subject was observed taking a pair of shoes from a rack, placing them on his feet and exiting the store. (Victim #1), who is store security, confronted the subject outside of the store. The (S) began punching the (V) in the face. The (S) cut the (V) in the face and rib area with a razor knife he had in his hand. (V#1) managed to cuff the (S) and take him inside to call P.D. Multiple items taken from the store, by the (S). They were recovered in the parking lot and (S's) backpack. (V#1) was checked by paramedics and advised to obtain stitches. The (S) was booked into County Jail.

## PAST LEGAL HISTORY:

Mr. Barnett has any number of previous priors including assault with a deadly weapon with personal use of a deadly and dangerous weapon, attempted burglary of an inhabited dwelling house with personal use of a deadly and dangerous weapon, burglary of an inhabited dwelling house, assault with a deadly weapon with personal use of a firearm, abusing animals, and burglary.

## DRUG AND ALCOHOL HISTORY:

Mr. Barnett states that he started to drink alcohol at around age nine or ten. He states that mother is a very heavy drinker, and that she drinks at home most of the time. He states that her consumption is a couple of twelve packs a day. He states that he drinks now about four cans of beer a day when not incarcerated and that he has never been arrested for public drunkenness. He states that he always stays at his house and drinks with his mother. He states that he started using pot when he was around 15 and that he got it from one of his older brothers. He says that he has been smoking it ever since and admits to smoking about five to six joints per day. He says also that he smokes Hashish, getting his Hash in balls in order to smoke it in a pipe. He states that he last used alcohol and pot over a year ago when he was arrested and came off cold turkey. He states that he has never had any seizures. He claims to have never seen a mental health professional before other than the psychiatric technicians which he had seen in jail.

2

**SOCIAL HISTORY:**

Dennis Ray Barnett says that he was born on 12/20/59 and is currently 39 years of age. He states that he was born and raised in San Jose to an intact family. He says that he was the seventh child and that he had 4 or 5 previous brothers and two sisters. He says that all of them are still living and that one brother is in jail at San Quentin He says that there was one more child after him, a boy who is doing okay. He states that his father is on Social Security Disability and had earlier on in life, worked at a moving company. He says now his father is almost completely blind in both of his eyes. Dad also has Diabetes, drank a little, but was not a drunk. He states that mom stayed at home and has never worked. He states that his parents seemed happy in their marriage and that dad was disabled from the time that Dennis was a little kid. Dennis says that as a kid he always was sick with colds, had all of the usual cold and kid diseases, and had the flu a lot. He says that he was kind of a sickly kid and that he had ear infections also. He says that his mother has been a smoker all of his life and that his little brother is also a smoker.

Dennis states that when he was little, he did get hit by a car. He says that he was in the hospital and had sores all over his face and stitches in his lips. He doesn't know whether he had broken bones or not and does not remember if he lost consciousness or not during the hospitalization. He says as far as he knows, he has never been hospitalized for anything else. He says that he did go to grammar school and guesses that he did "all right." He says that he "got A's." He says that he "was a good student, but was always lazy." He says he had trouble learning to read and at first was in regular education, but quickly was moved to a special education school. He says that he was moved because he was the slowest one in his class. He says that this probably happened to him in kindergarten or first grade, but he doesn't remember when. He says that his teachers were okay, but that he sometimes got into trouble by skipping classes. He says he does not remember anything else outstanding about his elementary school experience or anything that happened to him during that time period.

He states that he went to Guilford School for junior high and that he liked the school "okay." He states that he did "all right" but that "the other kids picked on me." He states that he was "scared of fighting" and that when the other kids found out they used it to humiliate him.

Here, for some reason, Mr. Barnett interjects that "Dr. Pearson found me incompetent to stand trial." Following this, he says that girls have always been scared of him.

Mr. Barnett says that he went to San Jose High School and was still in Special Education classes during that time. He says that "they wanted me to graduate, but I didn't want to because I couldn't read or write." He states that he never learned how to read or write and so he dropped out of school in the 11th grade. He says that, following that, he never had any more schooling. He states that he was never married, has no children, has never lived with a woman, but did live with his mother and father at home. He states that he did not have an automobile, that he has never had a driver's license. He claims to have been in jail "only" four to five times prior, for burglaries. He states that father used to

3

beat all of the kids with a belt and says that it happened when they got into trouble. He says that father did/does it with a belt and that the kids "got it for smart talking to mom and dad." Evidently, dad can still go into a pretty significant rage. Mr. Barnett says that he has "never hurt anyone" and that he "doesn't pick fights." He says that he has resisted arrest.

Mr. Barnett says that he has heard voices since he was in grade school. He says that the voices tell him to kill himself or to kill other people. He says that the voices tell him that other people are "not to be trusted." He says that it is much worse when he has been drinking or on drugs because he is "tripping out." He says that sometimes the voices come from his television and that they just come up and say "kill." He says that one day a spaceship came and picked him up. He says that they operated on him and put something in the back of his head so that they could track him. He says that "the operation didn't hurt, it was easy." He says that when they track him down, they get him to "bring people to them and they cut off parts of people's bodies." He says "they got a lot of parts there, bones." He says that they put these body parts in containers with something like water "to preserve them." He says that "they have a head that's been chopped off." He has seen two of them, a lady and a man and that these heads are on the ship. He says that he has been to the ship 4-5 times and that he works for them and that is "what I want to do." He says that if he doesn't do this, they'll "do me, just like that."

He frequently asked me during the course of the interview if I were from the CIA and I reassured him that I was not, but he acknowledged that it was only my word and that it would be easy for me to lie if he didn't trust me, so I worked on establishing trust with him. He says that the voices "got worse about two months ago" and that he "got tired of the voices" and that he "wanted to get rid of himself." He says that they "locked me up." Once again, he asked me if I "worked for the CIA" and said "they're after me to kill me." When I asked him why, he replied that "they think I know something about them." He, however, does not know what it is that they did that he knows about them. Finally, he says that the people in the spaceship first came and got him when he was about 8 or 9 years of age and that they "just operated on his head." He says that they did nothing to any other members of his family and/or to his friends, only to him.

## MENTAL STATUS EXAMINATION:

As previously stated, Mr. Barnett seems to be about 5'5" to 5'6" in height, has a pot belly, weighs somewhere between 150-170 pounds, has blondish-gray long, thinning, somewhat scraggly hair and has a beard of his face that is groomed and trimmed. He was only moderately well groomed and of course was dressed in prison orange. He did not establish much eye contact and when he did, he broke it off frequently. He had no other mannerisms that appeared unusual. During the course of the evaluation, we did ask to have his right hand released so that he could write and draw as needed for the examination.

Mr. Barnett was not oriented as to time and place, did know who he was, and seemed to be unclear about his present situation. He was aware of my role, interestingly enough.

4

Mr. Barnett's speech delivery was somewhat slow and laid back and generally was somewhat quiet and unobtrusive. There was normal rate, a flatness of tone quality, adequate articulation on the words that he did and could use and a number of grammatical and syntactical errors in terms of how he spoke and talked. His vocabulary was limited and at times his word usage was defective in meaning and organization.

From a thinking standpoint, Mr. Barnett was confused, his associations were sparse, logic was sporadic and clarity and coherence were compromised. The rate of thought production was adequate but there were cognitive problems such as blocking, confabulation, circumstantiality and rationalization. Attention was fair and immediate memory was good, but recent and remote memories were extremely poor. Mr. Barnett himself was an extremely poor and generalized historian and it was very difficult for him to give specific names, dates, places and events. The estimation of the level of his general overall intellectual functioning based on his vocabulary, reasoning, judgment, and organization of thought, as well as his answers to questions about topics of general information, fairly simple arithmetic problems and abstract reasoning skills or tasks was one of mental defectiveness Mr. Barnett's prevailing emotional tone was one of a mild to moderate degree of depression and a pretty flat affect. In psychological testing, there was certainly expressions of bodily concerns, distortions of self-concept, some obsessional tendencies, and certainly delusions and hallucinations. Insight, self-understanding, judgment and his appreciation of his condition, expectations and plans are all profoundly almost non-existent.

## PSYCHOLOGICAL TESTING:

On the Wechsler Adult Intelligence Scale-Revised, Mr. Barnett achieves a Full Scale IQ of 68, which places him in the second percentile nationally, the Mentally Defective range. This Full Scale IQ score is made up of a Verbal IQ of 67 which is, once again, in the Mentally Defective range and in the first percentile and a Performance IQ of 72 which is in the Borderline range of intellectual functioning and places him in the 3rd percentile. Both Verbal and Performance Sub-Tests Standard Scores range from a scaled score of 3 through a scaled score of 5 across the board, indicating a very narrow range of intellectual functioning which is quite consistent and persistent across all eleven subtests. As a result, there is indeed reason to believe that, first of all, Mr. Barnett is at least moderately developmentally disabled cognitively. In addition, there may be some organic dysfunctioning of some kind, but if this is so, it is diffuse rather than localized. Finally, there is indication that he is also indeed psychotic, but it does not appear that the psychosis is relatively well compartmentalized could not be so pervasive as to depress all of his intellectual functioning to such an extent. With both the neuropsycholgical damage and the psychotic functioning, we would see instead more localized areas of cognitive depression and the effect would not be nearly so pervasive as it is.

On the Symptom Check List-90-R (SCL-90-R), Mr. Barnett shows some interesting characteristics. On the Positive Symptom Total, Mr. Barnett checks a large number, indicating that he feels quite a breadth of symptoms affect him. In addition, on the Global Severity Index, which is the best single indicator of the current level or depth of

the disorder, combining information concerning the number of symptoms reported along with the intensity of perceived stress, Mr. Barnett's score is only mildly to moderately elevated, indicating that given all of the symptomatology, it does not necessarily bother him that much. Finally, his score on the Positive Symptom Distress Index indicates that he does not appear to be either augmenting or attenuating his symptomatic distress levels and thus it shows him to be somewhat in denial with regard to the amount of distress that he may actually have.

It should be remembered that Mr. Barnett is currently on Haldol, Cogentin and Benedryl and that even with that, he has a moderate elevation on the somatization scale which reflects distress arising from perceptions of bodily dysfunction. It should be noted that Mr. Barnett states that he doesn't know why he is these drugs, that they have helped him, but he doesn't know just how. Complaints focus on cardio-vascular, gastro-intestinal, respiratory and other symptoms with strong autonomic mediation. Pain and discomfort of the gross musculature and additional somatic equivalents of anxiety are also components of somatization.

In addition, he shows a mild degree of elevation on the obsessive-compulsive dimension which focuses on thoughts, impulses and actions that are experienced as unremitting and irresistible and that are of an ego-alien or unwanted nature. Also, there is a moderately severe elevation on the depression scale which reflects dysphoric mood and affect through signs of withdrawal of life interests, lack of motivation and loss of vital energy. In addition, there are feelings of hopelessness, thoughts of suicide and other cognitive and somatic correlates of depression which are included. There are also indications of a generalized anxiety at the moderately severe level, indicating symptoms such as nervousness, tension, and trembling. Also included are panic attacks and feelings of terror, apprehension and dread. There is a mild elevation on the Phobic Anxiety scale which is defined as a persistent fear response--to a specific person, place, object or situation--that is irrational and disproportionate to the stimulus and leads to avoidance or escaped behavior. The items of this scale are meant to focus on the more pathonomic and disruptive manifestations of phobic behavior. Public anxiety is very similar in definition to "agoraphobia" (Marks, 1969), also called "phobic-anxiety-depersonalization syndrome by (Roth), 1959).

More moderately elevated is the Paranoid Ideation scale that represents paranoid behavior fundamentally as a disordered mode of thinking. The cardinal characteristics of projected thought, hostility, suspiciousness, grandiosity, centrality, fear of loss of autonomy and delusions are viewed as primary reflections of this disorder. Finally, the Psychoticism dimension is elevated to a moderate degree. This dimension represents the construct as a continuous dimension of human experience. Items indicative of a withdrawn, isolated, schizoid lifestyle were included as were first ranked symptoms of schizophrenia, such as hallucinations and thought control. There is a graduated continuum from mild interpersonal alienation to dramatic, florid psychotic incoherence available in this scale.

6

**DIAGNOSIS:**

Axis I:   (1)  300.81 Undifferentiated Somatoform Disorder, Moderately Severe to Severe.

(2)  292.89  Anxiety Disorder Due to Alcohol and Cannabis with Generalized Anxiety, Obsessive Compulsive and Phobic Symptoms, Moderately Severe.

(3)  295.90  Chronic Undifferentiated Schizophrenia with Strong Depressive and Moderate Paranoid Features. Episodic with Inter-Episode Residual Symptoms.

(4)  292.82  Polysubstance Induced Persisting Dementia, Moderately Severe (Rule Out).

Axis II:  (1)  317.00 Mild Mental Retardation

(2)  301.6  Dependent Personality Disorder, Moderately Severe.

Axis III:  N/A

Axis IV:  Problems with the Primary Support Group;
Occupational Problems; Educational Problems;
Problems Related to Interaction with the Legal System/Crime and other Psychosocial and Environmental Problems.

Axis V:  Global Assessment of Functioning (GAF) Current:  27
Past Year: 24

**DISCUSSION, CONCLUSION AND RECOMMENDATIONS:**

When Mr. Barnett is as he is now, that is, under the influence of psychiatric medication, he is no serious danger to himself or others.  However, if he stops taking his medications, and/or if he toxifies his psychiatric medications with alcohol and/or marijuana, then there is no telling what it is that he may do and, in fact, he has shown us that he is very capable of attempting to enact some sort of mayhem on other people.

With regard to the question that is asked by the court of this evaluator, it is my professional opinion at this time that Mr. Barnett is not able to fully understand and appreciate the nature of the proceedings taken against him.  He has replaced the fact that he has been remanded to jail because of crimes that he has committed, one of them presently severe and others in the past, severe, in terms of their interpersonal implications.  My best judgment is that he knows that this is wrong, but I doubt that he has any memory that he committed these crimes and, in fact, has developed the compensating delusion that it is his mother who has put him into jail.  I also believe that it would be even more difficult for Mr. Barnett to assist his counsel in the conduct of his defense in a rational manner.  He would quickly delve into his delusions about his abductions, brain implants, and contact with the space people.  The sad fact of the matter is that Mr. Barnett is a mentally retarded, probably brain damaged, chronically mentally ill, revolving door criminal who is negatively catalyzed by alcohol and marijuana and

7

commits crimes most likely usually in either substance-induced and/or lack of medication induced psychotic stupors. It is clear to see that he is not a criminal in a predatory sense of the word, but that he is a criminal in the societal sense of the word in that he continues to do such dumb behaviors and dumb moves that he constantly brings himself within the purview of the legal system. He is not severely mentally ill enough to be held in any kind of locked facility for any great length of time, and yet he will constantly and consistently be a blight upon society in the legal sense in that he will continue to get into trouble. Whether it is worth it or not to keep him incarcerated in order to save him and society the consequences of his foolishness is for judges and juries to decide and there are many points both pro and con. Neither system serves him and others like him very well at this time. He could probably be housed indefinitely and benefit from a substance abuse 3/4-way house that provided strict guidelines and boundaries re: substance relapses, urinalysis and medication compliance.

Should you have additional comments or questions regarding this case, please don't hesitate to contact me at your convenience. I remain,

Sincerely yours,

Leonard J. Donk, M.A., Ph.D.
Licensed Psychologist

LJD/rkd
c.

8

ROBERT C. BURR, M.D.
Diplomate of the American Board of Psychiatry and
Neurology in Psychiatry
105 South Drive, Suite A
Mountain View, CA 94040

Telephone (415) 969-9670
Fax (415) 493-1471

July 25, 1997

Edward Nino, Jr., Esquire
Deputy Public Defender
Office of the Public Defender
120 West Mission Street
San Jose, California 95110

Re:               Dennis Ray Barnett
Case Number:      C9744559

Dear Mr. Nino:

This is the report of my psychiatric evaluation of your client, Dennis Ray Barnett.
Mr. Barnett was examined under Section 1017 of the Evidence Code as you requested.

## HISTORY:

Mr. Barnett is a short, somewhat stubby, 38-year-old man, who has been in jail for a short while. I did not receive a police report in this case. Mr. Barnett however states that he was arrested outside a Walgreen's store. He states that a security guard approached him and tapped him on a backpack that he was wearing. He turned around, feeling that the security guard was approaching him with hostile intent, and he started to push the security guard. He states the security guard grabbed his wrist. He pushed and then punched the security guard in the face. He states he did not know at that time that the man was a security guard. At that point the man made it known to him that he was a security guard and was arresting him. With the assistance of some other people, he handcuffed Mr. Barnett. Mr. Barnett states the security guard stated that he announced very loudly that he was approaching him and that he was a security guard, whereas Mr. Barnett says he did not hear this.

Mr. Barnett states that the security guard accused him of having stolen some shoes from the Walgreen's store. He states that he tried them on, was in the store for a while, and forgot that he had the unpaid shoes on, and walked out with them on by mistake.

## MENTAL STATUS EXAMINATION:

The subject is a short, somewhat overweight man, who appears somewhat frustrated. He is off by four days in orientation. He thought the president of the United States was Pete

Edward Nino, Jr., Es...
Re: BARNETT, DENNIS RAY
July 25, 1997
Page 2

Wilson, and was surprised to learn that he is the governor of California. He also did not recognize the name of the president, Bill Clinton, although after talking for a few minutes he seemed to have some familiarity with the name. He had major difficulty doing any simple mathematical calculations. The subject states that he hears the voice of the devil and also hears his dead mother's voice sometimes. He states that he made a pact with the devil, selling his soul to the devil in the past, but he does not recall what he got in return from the devil. He has this ongoing relationship with the devil, which includes apparently auditory hallucinations. The subject also appears to have a very short fuse. He told of instances in his life when he got angry and would want to hit the person, and he seemed to have very little ability to refrain from hitting or expressing anger physically. Even now he is feeling lots of anger toward his parole officer because that person was not easy to reach when Mr. Barnett was out of prison, and he almost blames that fact as a partial explanation for his getting back in jail. The subject is of low intelligence and attended special classes in school. His judgment is marginal. His affect is frustrated, irritated, and somewhat depressed.

## SUMMARIZED PAST HISTORY:

The subject states he was born in Ohio and grew up in Cincinnati. He attended special classes to the twelfth grade, but did not graduate. He has never served in the military. He has not worked in a long time and cannot remember his last job. He has problems with both alcohol, marijuana, and hashish. He has an extensive past criminal record. He has been imprisoned three times. He states he was in prison in the 1980s for auto theft and burglary at the California Men's Colony and was on a psychiatric ward during part of that time. He states he was in California Men's Colony on another occasion for assault for four or five years. He also states he was in Soledad Prison recently for about 25 months for cruelty to animals, and that he was released from prison four days prior to the commission of the current offense. The subject states he is not married and never has been. He has never been psychiatrically hospitalized. He states he has been treated in the past however, probably mostly in prison, with Mellaril, Sinequan, and Haldol, two of which are antipsychotic drugs. He is currently being treated by the jail psychiatrist with trazodone, which is a sedating antidepressant, to help him with depression and insomnia. The subject states he is in relatively good health, although he does get migraine headaches.

## SUMMARY:

Dennis Ray Barnett is a very unfortunate man who suffers from a combination of conditions which reduce his ability to function effectively in the world. He is of low intelligence, probably mentally retarded. He shows elements of borderline personality

disorder, occasionally going over the line into the psychotic area with hallucinations, delusions about the devil, etc. He also has antisocial traits in his personality. He has a tendency toward depression, probably because of the frustration and unsatisfying nature of his life in general. He has very poor impulse control and frequently becomes angry because of his frustration with situations which he cannot adequately understand or deal with.

I do not believe he has schizophrenia, but rather, as I mentioned, borderline personality with, at times, psychotic functioning. With regard to your questions, I believe the subject is competent within the meaning of Penal Code 1368. He knows the nature of the offense, knows who his attorney is, and can cooperate with his attorney in presenting a rational defense. He has the above mentioned mental defects, i.e., mental retardation, borderline personality with psychotic features, and periodic depression or dysthymia. With regard to your question as to whether or not these conditions could affect his ability to form the requisite intent for the charge, I would say no. Obviously the subject is unfortunately is plagued with a number of conditions, any one of which by itself would probably not render him unable to form the requisite intent for the charge, but together reduce his capacity to direct his behavior in a rational and moral way as might be seen in the average person. I also feel that because of his various problems, including his low intelligence and impulsivity, it is very likely he will continue to behave in an antisocial manner in the foreseeable future.

Please contact me if you wish to discuss this case further.

Respectfully submitted,

Robert C. Burr, M.D.
D.A.B.P.N.P.

RCB:tmh

P.02

*handwritten: Beatty PD* 4-21-04 AA

PSYCHOLOGICAL
TESTING

PSYCHOTHERAPY
COUNSELING

**MICHAEL B. JONES, PH.D.**
(Clinical Psychology)
(Cal. Lic. # PSY 8242)
5710 Cahalan Ave., Bldg. #6
San Jose, CA 95123
Phone/Fax (408) 578-3199



(ENDORSED)
**FILED**
APR 1 3 1999

STEPHEN V. LOVE
County Clerk
Santa Clara County
By _____ DEPUTY

### PSYCHOLOGICAL EVALUATION

**IDENTIFYING INFORMATION:**

Defendant Evaluated:
Case No.:

Place Seen:                    Main County Jail

Date of Report:    4-13-99
Date Seen:         4-8-99

### PURPOSE OF EVALUATION:

I was appointed by the Honorable John J. Garibaldi to perform an examination upon the subject defendant pursuant to section 1368 of the Penal Code of the State of California. Specifically, the Court is seeking to address whether the defendant is competent to stand trial as gaged by the following criteria:

> A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder, he/she is unable to understand the nature of the proceedings taken against him/her and to assist counsel in the conduct of a defense in a rational manner.

I am the third Court-appointed expert who has seen the defendant in the past six months. He was informed of the purpose of the evaluation and that the results would not be kept confidential, since a written report would be provided to the Court.

### BRIEF SUMMARY OF FINDINGS:

Pursuant to the above legal criteria it is my professional opinion within a reasonable degree of psychological certainty that the defendant suffers from severe, chronic mental disorders which currently render him incompetent to stand trial. At the same time, he is exaggerating his symptoms, has lied and thus is clearly less impaired than he would like others to believe. Even so, lying while a central component of malingering, is not tantamount to it.

### METHODS OF ASSESSMENT:

Clinical Interview (2 hours)
Bender Visual-Motor Gestalt Test (BVMGT)
Draw-A-Person (DAP)

Defendant: Dennis Ray Barnett
Case No.: 199321
Page 2

Rorschach Psychodiagnostic Technique
Wechsler Adult Intelligence Scale-III (WAIS-III)
Review of multiple documents provided by the County and brief phone
conversations with Dr. Leonard Donk and Dr. Mark Paterson on 4-13-99

## MENTAL STATUS EXAMINATION:

Mr. Barnett is a short (about 5'4"), slightly overweight (about 170 lbs.) 38-
year-old Caucasian man who never finished high school and who spent most of his
school years in special education classrooms.  He has long, wavy, disheveled
greying hair that was combed back and an equally unkept full beard.  At the
time of evaluation He was taking 45 milligrams of Haldol (15 mgs. in the
morning and 30 mgs. at night) as well as cogentin for his psychotic symptoms.
(Due to history provided by the two previous Court-appointed evaluators, this
evaluation will not reiterate this material.)

Mr. Barnett was cooperative throughout the evaluation, adopting very much of a
passive, docile, unassertive approach.  He rarely made direct or sustained eye-
contact, and although he answered all questions put to him, his answers were
often terse and/or vague.  Clearly his most frequent response, especially to
questions or tasks he didn't know was:  "I'm not for so sure."  For the most
part he avoided engaging in any voluntary, give-and-take conversation, and he
often tended to get to "drift off," to appear "lost" and to get confused.  His
mood was pervasively subdued, and he was unable to express an appropriate range
of feelings; his affect, then, was very flat.

Moreover, Mr. Barnett's thinking was extremely concrete and literal, and
directions or questions often needed to be reiterated.  Gaging from the poverty
of the contents of his thoughts and his literal and concrete approach, his
general intellectual ability was well below average.  Mr. Barnett also
displayed very poor insight and practical judgement.  The only times he was
more verbal involved discussions surrounding the auditory hallucinations he
purported to experience.  He stated that he was hearing voices throughout the
evaluation and that this has been a problem for years.  These voices allegedly
tell him to kill himself and others; they have told him to "jump off a tier,"
to "jump in a lake," and to perform other bizarre actions.  Mr. Barnett also
reported hearing the television talk to him and that "one day last week a
Martian put something in my head, something to track me down."  When asked why
a Martian would do that, he replied:  "They have me bring people over to them
and do operations on them."

Consistent with Mr. Barnett's bizarre thinking was a failure to be oriented to
place.  Although he knew who he was and the approximate date, he continually
asserted that he was at Valley Medical Center.  He stated that he had been
placed in the hospital for "slapping my mother in the face."  When confronted
with the charges of assaulting a man with a razor knife, he asked:  "They say I
did something else?  When asked if this was not possible, he said:  "I don't
think so."  He went on to report that his "mother put me here because she

Defendant:  Dennis Ray Barnett
Case No.:    199321
Page 3

thinks I'm crazy," and when asked if he felt he was, he replied:  "No.  I'm
not."

Mr. Barnett was a very poor historian and was unable to give any coherent or
accurate history of his most recent arrest; again, he maintained that he was
incarcerated (hospitalized from his perspective) because he struck his mother.
He knew that he was charged with "assault with a deadly weapon" but when asked
what this weapon was, he said:  "My hand."  Mr. Barnett was unable to ascertain
the gravity of the present charges against him, and while he could use
relatively complex words and phrases at times, he often didn't understand their
meaning.

Mr. Barnett was able to recall having been arrested for other documented crimes
(such as burglary and assault with a screw driver) and that he had gone to jail
in the past and to the hospital at other times.

Mr. Barnett was only able to give accurate bits and pieces of information
regarding the legal process and was completely unable to put this information
together in a way that demonstrated he understood the legal proceedings against
him.  For example, he knew that a judge "orders people around," but he was
unable to articulate the overall role a judge plays in a trial.  He also was
able to say that his attorney "defends you," but when asked what the word
"defends" meant, he replied:  "I'm not for sure. . .defend me in court."  When
asked to give a step-by-step account of what happens to a person who is
arrested Mr. Barnett replied:  "Caught. . .(They) take you to jail, and they
book him."  When asked what "book" meant, he could only reply:  "They book you
for a charge."  He added:  "Then they house you, put you in a dorm."  At this
point he was unable to go any further.  When asked if the defendant saw a judge
at some point, he responded:  "I'm not for sure."  He was completely unable to
say what the District Attorney's role was, let alone how all of the
professionals interacted as a system.

On the other hand, the defendant does know more than he shares, in all
likelihood lied at times and is certainly not impaired enough to realize that
he faces extremely severe consequences due to past actions on his part.

## TEST RESULTS:

According to the Wechsler Adult Intelligence Scale-III (WAIS-III), Mr. Barnett
is currently functioning within the Mild portion of the Mentally Retarded range
and above less than one percent of his peers.  Both his overall verbal and
nonverbal reasoning skills are severely depressed, all falling either within
the Mildly Retarded or Borderline ranges.  This level of functioning is very
consistent with previous estimates and will not change significantly in the
future.

Mr. Barnett could not define such simple words as "repair" or "assemble" or
give such basic factual information as the number of weeks in a year or the

Defendant:  Dennis Ray Barnett
Case No.:   199321
Page 4

direction in which the sun rises, or the names of four men who have been
President of the United States since 1950.

Deficits in short-term memory were seen in his inability to recall three digits
after being presented to him orally.  He also could not count backwards by
sevens or forward by threes.

Deficits in comprehension were seen in his inability to state why certain foods
should be cooked, what a parole system was or why child labor laws are needed.

Commensurate with his low intelligence were deficits in basic academic skills.
For example, while he could write his name he was unable to recite the entire
alphabet, as he left out a several letters and got the sequence of some wrong.

Mr. Barnett's human figure drawings also reflected a retarded level of
intellectual functioning.  He was essentially only able to draw simple stick
figures, and his drawings lacked sufficient detail.  When asked to draw
anything he wanted and as best as he could, all that he could come up with was
a simple house made out of a square for the building, another square for a
door, and a triangle for the roof.  With further encouragement he added a
primitive looking car and dog.

Consistent with the above, his responses to the ink blot test were consistent
with a very impoverished personality structure.  He, then, has very few inner
resources which are deliberately accessible to him for purposes of coping and
solving problems.  He tends to attend to the more simple aspects of a situation
and to be overly challenged by more complex situations.  He has few inner
controls, and while over controlled most of the time, he has a real capacity to
respond explosively.

## RESPONSE TO QUESTIONS:

1) As a result of a mental disorder, is the defendant incompetent to stand
trial due to an inability to understand the nature of the proceedings taken
the proceedings taken against him/her and to assist counsel in the conduct of a
defense in a rational manner.

It is my professional opinion that the defendant suffers from severe mental
disorders which currently render him incompetent to stand trial.  He clearly
warrants severe serious psychodiagnoses.  These include a psychotic disorder
(either a Schizoaffective Disorder or a Schizophrenic Disorder), Mild Mental
Retardation; an Anti-social Personality Disorder and a history Alcohol and
Cannabis Abuse.  Given his low level of intellectual functioning, and the fact
that his mental illness (such as his psychotic symptoms) are going to wax-and-
want in severity to a certainty degree, it is unlikely that he has the
cognitive capacity to malinger for any extended period of time.  On the other
hand, while mentally retarded and psychotic, he is in no way completely out of
touch with reality.

Defendant:   Dennis Ray Barnett
Case No.:    199321
Page 5


At this time the defendant is clearly realizes that he is in trouble and that he faces a potentially very negative outcome. He, however, is confused about the specific charges against him, and this is largely a function of his contaminated by his disordered thinking. He doesn't fully appreciate the charges against him, and he is not able to provide factual data to assist in his own defense. He is also not able to give a credible history of the crime, and it is very difficult to see how he would be able to cooperate with his attorney in a rational manner, such as discussing types of defenses, understanding their differences, and making a reasonable choice between them.

Moreover, although at times the defendant is able to give vague descriptions of the roles various professionals play in court, such as his attorney, he doesn't understand adequately how the system operates as a whole. For example, he can mouth that a judges "gives orders," but he has no further comprehension of his role.

In summary, it is clear that the defendant is a career criminal who represents a clear, on-going danger to society in terms of engaging in senseless, poorly planned, brutal crimes against property and others with virtually no likelihood of change. It is also clear that he has become more savvy over time and is not as incompetent as he wishes other to view him as being. Nevertheless, the level of his impairment renders him incompetent to stand trial, at least at this time.


## EVALUATOR'S QUALIFICATIONS:

I am a clinical psychologist who has been in private practice evaluating and treating children, adolescents, adults and families since I was licensed by the Board of Psychology in February 1984. My license is valid until 3-31-1999. I have also been a clinical consultant at the Children's Health Council in Palo Alto, at Children's Hospital at Stanford and at Charter Hospital in San Jose. In addition, I was the consulting psychologist at the San Jose Children's Heath Council from 1983 to 1989. I graduated with honors from Brigham Young University in 1977 with my B.S. degree in psychology. I received my M.A. and Ph.D. degrees in clinical psychology from the California School of Professional Psychology—Los Angeles in 1979 and 1982, respectively.

My pre-doctoral training included four clinical internships: Los Angeles City College (77-78), Los Angeles Child Guidance Clinic (78-79), Intercommunity Child Guidance Clinic in Whittier CA (79-80), and Wadsworth Veteran's Administration in Westwood, CA (80-81). My post-doctoral internship was at the Coordinated Child Psychiatry clinic of Children's Health Council, Children's Hospital at Stanford and Stanford University Medical Center (82-83). During this time I also worked at the Autism research clinic and as well as coordinated the Tourette Syndrome research clinic at Stanford's Division of Child Psychiatry and Child Development.

The psychological assessment and treatment of children and adults, particularly

Defendant:  Dennis Ray Barnett
Case No.:   199321
Page 6


in regards to neglect, abuse, sexual molestation, and custody and placement issues, are sub-specialty areas.  I have performed hundreds of evaluations for the Family, Criminal and Juvenile Courts and been given testimony in court over one hundred times.


Sincerely,

Michael B. Jones, Ph.D.
Licensed Psychologist

# FAX TRANSMISSION

C. Mark Patterson, Ph.D.
120-A Santa Margarita Avenue
Menlo Park, CA 94025-2725

Phone:     650-325-7315
Fax:       650-323-6145

TO: _Judge J. Chang / Judge C. Gallagher_

FAX
NUMBER: _(408) 280-6057_

IN
RE: _1367-68 PC   Evaluation_

DATE & TIME
SENT: _11/23/98_

NUMBER OF PAGES (including cover sheet): _9_

NOTES: _____

_____

_____

_____

If you have any trouble receiving this transmission, please call **650-325-7315** immediately.

This FAX is intended only for use of the person or office to whom it is addressed and may contain information that is privileged, confidential or protected by law. All others are hereby notified that the receipt of this FAX does not waive any applicable privilege or exemption for disclosure and that any dissemination, distribution, or copying of this FAX is prohibited. If you have received this FAX in error, please notify me immediately by telephone at the above number and return the original FAX to me at the above address. Thank you.

**C. Mark Patterson, Ph.D.**                    **Clinical & Forensic Psychology**

120-A  Santa Margarita Avenue                   License No. PSY12725
Menlo Park, CA  94025-2725                       Tel. 650.325.7315

---

The Honorable James H. Chang
Judge, Superior Court of the State of California
in and for the County of Santa Clara
Hall of Justice, Dept. 24
190 West Hedding Street
San Jose, CA  95110

**F I L E D**
NOV 2 4 1998
STEPHEN V. LOVE
County Clerk
Santa Clara County
BY _____ DEPUTY

11/16/98

RE:         Dennis Ray Barnett, 199321
            Nature of Hearing:  §1367-68 PC
            Current Competence to Stand Trial

Examiner:  C. Mark Patterson, Ph.D.   License No.  PSY12725 (Expiration
date:  11/30/99)

Introduction:   This report summarizes the court-ordered evaluation of
Dennis Ray Barnett pursuant to §1367-68 PC.   The evaluation was
completed in the Santa Clara County Main Jail, (8th floor interview room
and 2nd floor records room) on 11/12/98 between 1:48 PM and 3:33 PM (1
hour and 45 minutes).

Sources of Information Used to Complete the Evaluation:

1. Order for the Psychological Evaluation, 10/23/98 (1 page).
2. San Jose Police Department Report, 6/19/97 (12 pages).
3. Main Jail mental health records for current incarceration, (approximately
75 pages).
4. Face-to-face interview, on 11/12/98, including psychological testing (see
test descriptions below).

<u>Psychological Tests Used</u>:

(1) "Cognistat" (The Neurobehavioral Cognitive Status Examination). This test is a neuropsychological screening measure of various basic aspects of cognitive function.

(2) "Revised-Competency Assessment Instrument." This semi-structured interview and rating scheme is used to assess a person's current competence to stand trial.

(3) "Georgia Court Competency Test." This brief rating scheme provides a quantitative measure of knowledge and skills necessary for trial competency.

<u>Test References</u>:    Tate, W. (1995). <u>Manual for Cognistat</u>. The Northern California Neurobehavioral Group. Fairfax, CA.

Riley, J.A., Nelson, C., & Gannon, J.L. (1989). <u>Revised-Competency Assessment Instrument</u>. Atascadero State Hospital.

Wildman, R., Batchelor, E., Thompson, L., Nelson, F., Moore, J., Patterson, M., & Delaosa, M. (1980). <u>The Georgia Court Competency Test: An attempt to develop a rapid, quantitative measure for competency for trial</u>. Unpublished manuscript, Forensic Services Division, Central State Hospital, Milledgeville, GA.

<u>Informed Consent</u>: The following statement was presented to the defendant at the outset of the interview. "Today, we are meeting because I have been asked by the court to evaluate your ability to stand trial. You should be aware, then, that the purpose of our discussion is for me to give my opinion to the court, not to decide how you will be treated. You can choose to speak with your lawyer first, if you like. Keep in mind that anything you tell me will not necessarily be confidential, so you shouldn't tell me anything you would not want the court to find out. Do you have any questions? Can I go ahead and ask you some questions now?"

The defendant appeared to understand the purpose of the interview because he was able to repeat the basic purpose of our meeting, although he required several attempts with coaching to express the purpose. He agreed to

continue the evaluation. This evaluator judged that he gave adequate informed consent for the interview.

## CURRENT PROBLEMS.

The Honorable James H. Chang, Judge of the Superior Court, referred the evaluation of Dennis Ray Barnett to this examiner. The defendant is charged with assault with a deadly weapon, theft with priors, and parole violation. The defendant has a significant history of psychiatric problems, including during his current incarceration. He was arrested on 6/19/97 in San Jose, CA, after being charged with assaulting a Kmart store security guard with a cutting instrument and with stealing items from the store.

## DATA RELEVANT TO COMPETENCE TO STAND TRIAL.

<u>Understanding of the charges</u>: The defendant denied knowing the charges against him. He insisted that his mother put him in jail (which he referred to as a mental health facility). He said his mother put him there because "she thinks I'm crazy." At this point in the interview he described apparent delusional thinking about being taken by "Martians" for an operation on his head. He reported that he does not know why he was arrested and said he could not give information about what happened just prior to his arrest.

<u>Appreciation of the possible penalties</u>: He did not appear to appreciate the possible consequences of being found guilty. However, the medical record documents that the defendant does have some awareness of the "strikes" against him and the possible outcome(s) of his legal dilemma.

<u>Appraisal of the available defenses</u>: His understanding of the basic legal defenses (pleas) appeared inadequate. He could list just one of the possible pleas.

<u>Appraisal of the likely outcome</u>: The defendant stated that he, and not the court, has authority over himself.

<u>Motivation to protect self in the legal process</u>: The defendant did not express self-protective motivation with respect to the outcome of the trial.

<u>Capacity to disclose pertinent information to counsel</u>: When asked about his discussion of the case with his attorney, he reported that his attorney told

him that "everything is alright" to which he replied "cool." He said he does not remember what preceded and caused his arrest. He said he would tell his attorney "the truth" in order to help his attorney defend him.

<u>Ability to cooperate rationally with counsel</u>: The defendant said he does not have confidence in his attorney but said he does not know why. He appeared unable to report the meaning of confidentiality between counsel and defendant. He said he does not know his attorney's name and gave a marginally adequate response to a question about how he would contact his attorney if the need arises. He appeared to struggle to provide even a physical description of his attorney.

<u>Planning legal strategy</u>: The defendant said he does not know the nature of a plea bargain.

<u>Ability to manifest appropriate courtroom behavior</u>: He appears to grasp the basic expectation for respectful behavior in the courtroom.

<u>Capacity to testify</u>: The defendant does not appear to have a basic understanding of the events surrounding his arrest, or at least said he cannot remember them. Throughout the interview, he appeared mildly perplexed and tended to give impoverished responses to questions. His most common response to questions was "I'm not for sure."

<u>Appraisal of functions of courtroom participants</u>: He demonstrated poor understanding of various participants' roles. He demonstrated a marginally adequate understanding of the layout of a courtroom.

<u>Capacity to challenge prosecution witnesses</u>: His capacity to challenge witnesses appeared marginally adequate. His responses appeared to recognize the role of counsel in challenging witnesses.

## PERTINENT SOCIAL/LEGAL/MENTAL HEALTH HISTORY.

The information in this section is based on the defendant's self-report and his jail medical record. The defendant's self-report was typically vague and impoverished in discussing his personal history.

<u>Psychosocial History</u>: The defendant has eight siblings. Both parents raised him. He completed part of the 12th grade. He has never been married and

has no children. He has not lived away from his parents' home except when incarcerated. He has been unemployed for most of his adult life; he worked as a dishwasher in a restaurant and as a stockman in a liquor store, both jobs for two years. He was fired from at least one of his jobs for stealing.

<u>Legal History</u>: The defendant reported that he has prior arrests for burglary and attempted arson.

<u>Medical History</u>: He reported having had a head injury as an infant as a result of being hit by a car; he spent several weeks in the hospital for that. He denied any history of seizures. He said he was born with a "speech problem." He gave vague information about two other head injuries that involved loss of consciousness —both as the result of physical fights— during the past ten years of his life.

<u>Mental Health and Substance Abuse</u>: The defendant reported that he has had problems (medical, occupational) related to alcohol use; he said he drinks large amounts of alcohol on a daily basis. He denied use of illicit drugs.

At present, the defendant is prescribed several psychotropic medications for psychosis, depression, and the side effects of the antipsychotic medication. The record indicates a mental disorder diagnosis of "Schizoaffective Disorder." Based on his jail record, he has shown some signs and symptoms of a psychiatric disturbance (probably a psychosis) during his current incarceration such as delusional thinking, depressed mood, and auditory hallucinations.

During the interview, he described or exhibited symptoms of psychosis. These symptoms included intermittently disorganized speech and thought, odd or delusional thinking, flat affect, and auditory hallucinations. He has a significant history of mental health problems and psychiatric hospitalizations, including at least one suicide attempt. He has experienced extended periods of time with suicidal ideation. The symptoms he evidenced during the interview are consistent with a mental disorder diagnosis, quite likely a psychotic disorder with mood disturbance.

## MENTAL STATUS EXAMINATION and TEST RESULTS.

This incarcerated Anglo-American male was of below average height and moderately obese. He appeared his older than his recorded age (38). His level of consciousness appeared to be lethargic in general. There were several points during the interview when he had lapses of concentration. He was oriented to person and time, moderately well oriented to place, and moderately disoriented to date. He was wearing jailhouse garb without shackles. He was poorly groomed and appeared sickly. He appeared withdrawn, perplexed, distractible, and mildly guarded, although he was generally cooperative during the interview. He made fair eye contact. The tempo and loudness of his speech were slow and quiet, respectively. He often mumbled and sometimes slurred his speech; at times, he fused words into odd combinations or spoke in a garbled manner. Sometimes, his speech was disorganized (e.g., tangential), although more typically he demonstrated impoverished content of thought. His mood appeared dysthymic but calm. His affect was flat and mood-congruent. His common sense judgment appeared poor. His self-insight also appeared limited, although he admitted that he has had mental health problems. His level of psychomotor activity appeared retarded. His attention span appeared mildly to moderately impaired. He demonstrated capacity for abstract thought but demonstrated concrete thinking during most of the interview. His thinking showed evidence of delusional content. He reported recent suicidal ideation. There was no evidence of intoxication. There were no obvious signs of malingering.

Results of the "Cognistat" test: This test measures several aspects of cognitive function: level of consciousness, orientation, attention span, language comprehension and repetition, naming common objects, short-term verbal memory, short-term visual memory and problem solving, simple arithmetic calculations, abstract reasoning, and common sense judgment (in hypothetical situations). He performed within the average range (unimpaired) on three subtests of this measure: orientation, language comprehension, and short-term visual memory/nonverbal problem solving skills. On each of the other subtests, he showed some level of apparent impairment, from slight to severe.

Results of the "Georgia Court Competency Test": Data concerning different aspects of competence are described above. His performance on this

measure was below the suggested cut-off for trial competency.  See the discussion below.

## DISCUSSION OF FINDINGS and CONCLUSIONS.

Between the medical record and information gathered during the interview, there is sufficient evidence that this defendant is experiencing a mental disorder (e.g., schizoaffective disorder or some other mental disorder with disturbances of both reality testing and mood).  He demonstrated psychiatric symptoms at the time of this evaluation as well as various cognitive difficulties (e.g., disorganized, delusional, impoverished thinking, and impaired verbal memory).

This defendant appeared marginally competent to stand trial in terms of his appreciation of the physical layout of the courtroom and his understanding of what he could do to challenge the testimony of a witness.  By his demeanor during the interview, it appeared likely that he would manage his behavior according to expectation during a trial.  Also, he expressed the idea that the way to help his attorney mount a defense is to tell the truth.  However, it was not at all clear from the interview that the defendant has the current capacity to relate much of anything to his attorney.  He appeared unable to provide information about his arrest or the events leading up to it.

He appeared currently incompetent to stand trial in a variety of ways: capacity to disclose pertinent information to counsel, appraisal of the likely outcome, planning legal strategy, capacity to testify, understanding the charges against him, appreciation of possible penalties, appraisal of available defenses, understanding the roles of various courtroom personnel, and motivation to help himself in the legal process.  Although the defendant demonstrated a lack of understanding of the criminal proceedings against him during the interview, the jail medical record indicates that he has some understanding of his legal predicament.  This apparent discrepancy suggests the possibility that he is exaggerating his level of trial incompetence.

The defendant expressed a lack of confidence in his attorney.  More generally, his ability to cooperate in a rational manner appeared inadequate at this time insofar as he appeared to be experiencing psychiatric symptoms (i.e., disordered thinking) that could easily interfere with that ability.

1203



**CALIFORNIA DEPARTMENT OF**

# Mental Health

Atascadero State Hospital
P. O. Box 7001, Atascadero, CA 93423-7001
(805) 468-2000   Fax: (805) 466-6011

July 16, 1999

Judge of the Superior Court
County of Santa Clara
Hall of Justice, Superior Court Building
190 West Hedding
San Jose, CA 95110

RE:         BARNETT, DENNIS RAY
SC NO:     199321
AT NO:     049076-3
DOB:       12-20-59

Dear Judge,

This is to advise you that the above-named patient will be transferred to Patton State Hospital on July 20, 1999.

Sincerely,

Robert S. Knapp, M.D.
Medical Director

*Rebecca A. Roda*

Rebecca A. Roda ,CCRA
Health Information Management Department /PAD


cc:    District Attorney
       Defense Attorney
       County Mental Health Services

PSYCHOLOGICAL                                                    PSYCHOT
EVALUATIONS                                                      COUNSEL

MICHAEL B. JONES, PH.D.
(Clinical Psychology)
(Cal. Lic. # PSY8242)
5710 Cahalan Avenue, Bldg. #6
San Jose, CA  95123
(408) 578-3199


To: Michelle Wright                    Date:   4-12-99
Re: People v Barnett
    Case No.:  199321
    (Psychological Evaluation)



Sincerely,

Michael B. Jones, Ph.D.
Licensed Psychologist

PSYCHOLOGICAL
TESTING

PSYCHOTHERAPY
COUNSELING

MICHAEL B. JONES, PH.D.
(Clinical Psychology)
(Cal. Lic. # PSY 8242)
5710 Cahalan Ave., Bldg. #6
San Jose, CA 95123
Phone/Fax (408) 578-3199

**F I L E D**

APR 16 1999

STEPHEN V. LOVE
County Clerk
Santa Clara County
BY _____ DEPUTY

## PSYCHOLOGCIAL EVALUATION

### IDENTIFYING INFORMATION:

Defendant Evaluated: Dennis Ray Barnett
Case No.:                    199321

Date of Report:  4-13-99
Date Seen:       4-8-99

Place Seen:          Main County Jail

### PURPOSE OF EVALUATION:

I was appointed by the Honorable John J. Garibaldi to perform an examination upon the subject defendant pursuant to section 1368 of the Penal Code of the State of California. Specifically, the Court is seeking to address whether the defendant is competent to stand trial as gaged by the following criteria:

> A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder, he/she is unable to understand the nature of the proceedings taken against him/her and to assist counsel in the conduct of a defense in a rational manner.

I am the third Court-appointed expert who has seen the defendant in the past six months. He was informed of the purpose of the evaluation and that the results would not be kept confidential, since a written report would be provided to the Court.

### BRIEF SUMMARY OF FINDINGS:

Pursuant to the above legal criteria it is my professional opinion within a reasonable degree of psychological certainty that the defendant suffers from severe, chronic mental disorders which currently render him incompetent to stand trial. At the same time, he is exaggerating his symptoms, has lied and thus is clearly less impaired than he would like others to believe. Even so, lying while a central component of malingering, is not tantamount to it.

### METHODS OF ASSESSMENT:

Clinical Interview (2 hours)
Bender Visual-Motor Gestalt Test (BVMGT)
Draw-A-Person (DAP)

Defendant:   Dennis Ray Barnett
Case No.:    199321
Page 2

Rorschach Psychodiagnostic Technique
Wechsler Adult Intelligence Scale-III (WAIS-III)
Review of multiple documents provided by the County and brief phone
conversations with Dr. Leonard Donk and Dr. Mark Paterson on 4-13-99

## MENTAL STATUS EXAMINATION:

Mr. Barnett is a short (about 5'4"), slightly overweight (about 170 lbs.) 38-year-old Caucasian man who never finished high school and who spent most of his school years in special education classrooms.   He has long, wavy, disheveled greying hair that was combed back and an equally unkept full beard.   At the time of evaluation He was taking 45 milligrams of Haldol (15 mgs. in the morning and 30 mgs. at night) as well as cogentin for his psychotic symptoms. (Due to history provided by the two previous Court-appointed evaluators, this evaluation will not reiterate this material.)

Mr. Barnett was cooperative throughout the evaluation, adopting very much of a passive, docile, unassertive approach.   He rarely made direct or sustained eye-contact, and although he answered all questions put to him, his answers were often terse and/or vague.   Clearly his most frequent response, especially to questions or tasks he didn't know was:  "I'm not for so sure."   For the most part he avoided engaging in any voluntary, give-and-take conversation, and he often tended to get to "drift off," to appear "lost" and to get confused.   His mood was pervasively subdued, and he was unable to express an appropriate range of feelings; his affect, then, was very flat.

Moreover, Mr. Barnett's thinking was extremely concrete and literal, and directions or questions often needed to be reiterated.   Gaging from the poverty of the contents of his thoughts and his literal and concrete approach, his general intellectual ability was well below average.   Mr. Barnett also displayed very poor insight and practical judgement.   The only times he was more verbal involved discussions surrounding the auditory hallucinations he purported to experience.   He stated that he was hearing voices throughout the evaluation and that this has been a problem for years.   These voices allegedly tell him to kill himself and others; they have told him to "jump off a tier," to "jump in a lake," and to perform other bizarre actions.   Mr. Barnett also reported hearing the television talk to him and that "one day last week a Martian put something in my head, something to track me down."   When asked why a Martian would do that, he replied:  "They have me bring people over to them and do operations on them."

Consistent with Mr. Barnett's bizarre thinking was a failure to be oriented to place.   Although he knew who he was and the approximate date, he continually asserted that he was at Valley Medical Center.   He stated that he had been placed in the hospital for "slapping my mother in the face." When confronted with the charges of assaulting a man with a razor knife, he asked:  "They say I did something else?   When asked if this was not possible, he said:  "I don't think so."   He went on to report that his "mother put me here because she

Defendant: Dennis Ray Barnett
Case No.: 199321
Page 3

thinks I'm crazy," and when asked if he felt he was, he replied: "No. I'm not."

Mr. Barnett was a very poor historian and was unable to give any coherent or accurate history of his most recent arrest; again, he maintained that he was incarcerated (hospitalized from his perspective) because he struck his mother. He knew that he was charged with "assault with a deadly weapon" but when asked what this weapon was, he said: "My hand." Mr. Barnett was unable to ascertain the gravity of the present charges against him, and while he could use relatively complex words and phrases at times, he often didn't understand their meaning.

Mr. Barnett was able to recall having been arrested for other documented crimes (such as burglary and assault with a screw driver) and that he had gone to jail in the past and to the hospital at other times.

Mr. Barnett was only able to give accurate bits and pieces of information regarding the legal process and was completely unable to put this information together in a way that demonstrated he understood the legal proceedings against him. For example, he knew that a judge "orders people around," but he was unable to articulate the overall role a judge plays in a trial. He also was able to say that his attorney "defends you," but when asked what the word "defends" meant, he replied: "I'm not for sure. . .defend me in court." When asked to give a step-by-step account of what happens to a person who is arrested Mr. Barnett replied: "Caught. . .(They) take you to jail, and they book him." When asked what "book" meant, he could only reply: "They book you for a charge." He added: "Then they house you, put you in a dorm." At this point he was unable to go any further. When asked if the defendant saw a judge at some point, he responded: "I'm not for sure." He was completely unable to say what the District Attorney's role was, let alone how all of the professionals interacted as a system.

On the other hand, the defendant does know more than he shares, in all likelihood lied at times and is certainly not impaired enough to realize that he faces extremely severe consequences due to past actions on his part.

<u>TEST RESULTS:</u>

According to the Wechsler Adult Intelligence Scale-III (WAIS-III), Mr. Barnett is currently functioning within the Mild portion of the Mentally Retarded range and above <u>less than one percent of his peers.</u> Both his overall verbal and nonverbal reasoning skills are severely depressed, all falling either within the Mildly Retarded or Borderline ranges. This level of functioning is very consistent with previous estimates and <u>will not change significantly in the future.</u>

Mr. Barnett could not define such simple words as "repair" or "assemble" or give such basic factual information as the number of weeks in a year or the

Defendant:  Dennis Ray Barnett
Case No.:    199321
Page 4

direction in which the sun rises, or the names of four men who have been President of the United States since 1950.

Deficits in short-term memory were seen in his inability to recall three digits after being presented to him orally.  He also could not count backwards by sevens or forward by threes.

Deficits in comprehension were seen in his inability to state why certain foods should be cooked, what a parole system was or why child labor laws are needed.

Commensurate with his low intelligence were deficits in basic academic skills. For example, while he could write his name he was unable to recite the entire alphabet, as he left out a several letters and got the sequence of some wrong.

Mr. Barnett's human figure drawings also reflected a retarded level of intellectual functioning.  He was essentially only able to draw simple stick figures, and his drawings lacked sufficient detail.  When asked to draw anything he wanted and as best as he could, all that he could come up with was a simple house made out of a square for the building, another square for a door, and a triangle for the roof. With further encouragement he added a primitive looking car and dog.

Consistent with the above, his responses to the ink blot test were consistent with a very impoverished personality structure.  He, then, has very few inner resources which are deliberately accessible to him for purposes of coping and solving problems.  He tends to attend to the more simple aspects of a situation and to be overly challenged by more complex situations.  He has few inner controls, and while over controlled most of the time, he has a real capacity to respond explosively.

RESPONSE TO QUESTIONS:

1) As a result of a mental disorder, is the defendant incompetent to stand trial due to an inability to understand the nature of the proceedings taken the proceedings taken against him/her and to assist counsel in the conduct of a defense in a rational manner.

It is my professional opinion that the defendant suffers from severe mental disorders which currently render him incompetent to stand trial.  He clearly warrants severe serious psychodiagnoses.  These include a psychotic disorder (either a Schizoaffective Disorder or a Schizophrenic Disorder), Mild Mental Retardation; an Anti-social Personality Disorder and a history Alcohol and Cannabis Abuse.  Given his low level of intellectual functioning, and the fact that his mental illness (such as his psychotic symptoms) are going to wax-and-want in severity to a certainty degree, it is unlikely that he has the cognitive capacity to malinger for any extended period of time.  On the other hand, while mentally retarded and psychotic, he is in no way completely out of touch with reality.

Defendant: Dennis Ray Barnett
Case No.:   199321
Page 5

At this time the defendant is clearly realizes that he is in trouble and that he faces a potentially very negative outcome. He, however, is confused about the specific charges against him, and this is largely a function of his contaminated by his disordered thinking. He doesn't fully appreciate the charges against him, and he is not able to provide factual data to assist in his own defense. He is also not able to give a credible history of the crime, and it is very difficult to see how he would be able to cooperate with his attorney in a rational manner, such as discussing types of defenses, understanding their differences, and making a reasonable choice between them.

Moreover, although at times the defendant is able to give vague descriptions of the roles various professionals play in court, such as his attorney, he doesn't understand adequately how the system operates as a whole. For example, he can mouth that a judges "gives orders," but he has no further comprehension of his role.

In summary, it is clear that the defendant is a career criminal who represents a clear, on-going danger to society in terms of engaging in senseless, poorly planned, brutal crimes against property and others with virtually no likelihood of change. It is also clear that he has become more savvy over time and is not as incompetent as he wishes other to view him as being. Nevertheless, the level of his impairment renders him incompetent to stand trial, at least at this time.

**EVALUATOR'S QUALIFICATIONS:**

I am a clinical psychologist who has been in private practice evaluating and treating children, adolescents, adults and families since I was licensed by the Board of Psychology in February 1984. My license is valid until 3-31-1999. I have also been a clinical consultant at the Children's Health Council in Palo Alto, at Children's Hospital at Stanford and at Charter Hospital in San Jose. In addition, I was the consulting psychologist at the San Jose Children's Heath Council from 1983 to 1989. I graduated with honors from Brigham Young University in 1977 with my B.S. degree in psychology. I received my M.A. and Ph.D. degrees in clinical psychology from the California School of Professional Psychology—Los Angeles in 1979 and 1982, respectively.

My pre-doctoral training included four clinical internships: Los Angeles City College (77-78), Los Angeles Child Guidance Clinic (78-79), Intercommunity Child Guidance Clinic in Whittier CA (79-80), and Wadsworth Veteran's Administration in Westwood, CA (80-81). My post-doctoral internship was at the Coordinated Child Psychiatry clinic of Children's Health Council, Children's Hospital at Stanford and Stanford University Medical Center (82-83). During this time I also worked at the Autism research clinic and as well as coordinated the Tourette Syndrome research clinic at Stanford's Division of Child Psychiatry and Child Development.

The psychological assessment and treatment of children and adults, particularly

Defendant:  Dennis Ray Barnett
Case No.:   199321
Page 6


in regards to neglect, abuse, sexual molestation, and custody and placement
issues, are sub-specialty areas.  I have performed hundreds of evaluations for
the Family, Criminal and Juvenile Courts and been given testimony in court over
one hundred times.



Sincerely,

*M. B. Jones Ph D*

Michael B. Jones, Ph.D.
Licensed Psychologist

128C-2 (11/7/01)

PROVISION

# RECOMMENDATION FOR ADAPTIVE SUPPORT

Inmate Name __Barnett, Annis__   CDC# _C77539_ Institution _CMF_ Housing _P 10_

## Excluded from Developmental Disability Program (DDP):

**NCF** ☐   Received passing score on cognitive test. No further evaluation needed without referral.

**DD0** ☐   Inmate did not pass or did not take a cognitive test, no adaptive support needs, provisional. Reevaluate within 120-210 days.

**NDD** ☒   Inmate did not pass or did not take a cognitive test, no adaptive support needs. No reevaluation needed without referral.

## Included in DDP:   *Inmate must always have a Staff Assistant in disciplinary hearing classification committee hearings, and in all contacts involving the use of a CDC Form 114 (administrative segregation reviews and hearings). In addition:*

**DD1** ☐   Does not usually require prompts to initiate/complete self-care and activities of daily living. Inmate may need adaptive supports when under unusual stress or in new situations.

**D1A*** ☐   Same functional ability as DD1.

**DD2*** ☐   Requires occasional prompts to initiate/complete self-care and activities of daily living.

**DD3*** ☐   Requires frequent prompts to initiate/complete self-care and activities of daily living.

**\* Victimization Concerns: requires housing in a designated DDP building/unit/wing, consistent with other case factor**

## Justification of DD0 and NDD / Adaptive Support Needs of DD1, D1A, DD2, and DD3:

Mr. Barnett was re-evaluated per his request via a 602. Despite a past diagnosis of mild mental retardation, his adaptive functioning is intact. His hygiene is good, his housing area is neat, he is able to follow instructions, and he gets along well with others. Mr. Barnett is able to self-advocate as evidenced by submitting multiple 602s and legal docum As stated in his last evaluation dated 10/30/02, if his limitations began compromise his functioning, he should ~~appear~~ be referred for an evaluation.

**Check one:**   ☐   **Regional Center Consumer**
☐   **May be eligible for Regional Center referral** *(possible onset before age 18)*
☒   **Not eligible for Regional Center referral** *(no developmental disability before age 18)*

Mental Health Clinician: _Tamara Sinclair-Faber By D_   _Psychologist_   _9/14/04_
Signature                      Print or stamp name          Title          Date

*(If the above is unlicensed)*
Licensed Clinician: _D. Silbaugh PhD_   _D. Silbaugh, PhD_   _Sr. Psychologist_   _9/15/04_
Signature                      Print or stamp name          Title          Date

DISTRIBUTION:   ORIGINAL:   Central File
COPIES:   Unit Health Record          Assigned CC-I          Housing Unit          I/M Assignment Office          Inmate          **DDP**
DDP Counselor          C&PR or CC-III          Education File          Work Supervisor

**CDC #:** C-77539      **NAME:** BARNETT, Dennis    **HOUSING** H-314-U
**CUSTODY:** CLO B      **CS:** 43/III    **ASSIGNMENT:** W/L for Porter, Kitchen Worker
**RELEASE:** MEPD: 4-5-41     **LOC:** CCCMS    **WG/PG:** A1A EFF: 6-13-01

<u>COMMITTEE ACTION:</u> REFER TO CSR, RECOMMEND RETENTION ENDORSEMENT AT CMF III CCCMS WITH CMC-E III AS ALTERNATE, CPP.

Inmate Barnett made a personal appearance this date before Unit III UCC for program & annual review. Subject received 72-hour notice and is prepared to proceed. C. Coelho, Correctional Counselor I, was present acting as Staff Assistant in the event the Subject had difficulty understanding the process or issues of this committee. This unprocessed case was twice deferred by the CSR (9-16-02 and 7-10-02) and will be re-submitted with corrective actions taken. Concerning the "safety concern" investigation at SQ, I spoke to the ISU Secretary at SQ on 11-14-02. She was unable to locate a file or information concerning Inmate Barnett; she advised that I would get a call back from ISU. As of this date, I have received no call or message. I interviewed Inmate Barnett about the situation and he told me that he was placed in ASU because a "kite" was dropped on him advising a move out of the unit. He does not know who wrote the note and has not had further safety concerns since leaving SQ. **CASE FACTORS:** Subject is a 42-year-old White 3rd striker received CDC on 10-20-00 from Santa Clara County for the controlling offense of 2nd Degree Robbery and a non-controlling offense of Assault with a Deadly Weapon resulting in a 45 year to life sentence. Subject was received CMF on 6-13-01 from SQ-RC for Psych & Return. Subject was unable to return to sending facility after release from the Department of Mental Health. A review of the subject's central file indicates no history of escape, computer or sex offenses. Arson related offense includes a 10-5-78 arrest/detention for Attempted Arson, disposition: released due to insufficient evidence. There are no holds, wants or detainers. Subject does meet criteria for PC 2962 MDO consideration. The archive file for discharged CDC # C-48004 has bee requested. CDC 812 was reviewed and updated and indicates no gang affiliation, however, enemies are noted. There are currently no enemies housed at CMF. The confidential file is noted. The CDC 840 and 127 are updated. TB Code is 22 dated 5-7-02. A letter has been sent to the medical department requesting an evaluation to determine an appropriate program. Barnett expressed a willingness to work and denies any disabilities that would prevent him from working. Mental health placement chrono dated 5-22-02 indicates Subject meets inclusion criteria for the MHSDS, level of care CCCMS. Subject is currently taking psychotropic medication under a Keyhea mandate. There are no DPP concerns. Subject is identified as NDD per CDC 128-C2 dated 10-30-02. Behavior indicator guidelines were updated/reviewed and no victim or predator designation was assigned. Restitution has been ordered by Santa Clara county case # 199321 in the amount of $10,000.00. Committee notes the following placement eligibility: MSF/Ranch, Camp, CCF, MCCF ineligible due to life sentence without an EPRD. CCRC/Work Furlough eligible. Restitution Center permanently ineligible due to no court order for victim restitution. Subject is ineligible for SAP based on time to serve. CDC 8021 is not applicable to this case, POB: Ohio. There are no registration requirements. There is a PC 3058.6 notification requirement. GPL 3.7 dated 3-8-89. Disciplinary history consists of Falsification of PIA Form 7-22-93, Theft of State Property 6-5-87, Assault on Another Inmate 3-2-87, Stimulants and Sedatives (Pruno Material) Contraband 2-26-87, False Property Slip/Contraband TV 2-12-87, Theft of State Clothing 1-31-87, Dangerous Contraband 1986, Physical Altercation 1986, Unissued Food Items from the Dining Room, Possession of Inmate Manufactured Weapon 1986, Fighting 1985, Theft of State Food 1985, Destruction of State Property 1984 and Force & Violence 1982. Subject does not meet single cell housing criteria. Subject's classification score is set at 43/III and custody is CLOSE B. An Institution Staff Recommendation Summary has been completed. Subject is requesting to continue present program here at CMF. **COMMITTEE ELECTS TO REFER TO CSR, RECOMMEND RETENTION ENDORSEMENT AT CMF III CCCMS WITH CMC-E III AS ALTERNATE, CPP.** Subject's next classification appearance is 10-03 for annual review. Subject actively participated during UCC and was in agreement with the action of this committee. Inmate Barnett was apprised of his right to appeal any action taken by this committee.

**COMMITTEE RECORDER:** W. J. SINKOVICH, CC-I    **CHAIRPERSON:** R. SANCHEZ, FACILITY CAPTAIN (A)
DR. T. THEIM, CLINICIAN

**DATE:** 11-19-02    **UNIT:** III    **CLASS:** PROG/ANN REVIEW    CMF WS/ws

TEST RESULTS:    Due to his inability to read and write, Mr. Barnett was not administered the group I.Q. nor achievement tests. In addition, he was not able to take the personality inventory customarily administered. Consequently, Mr. Barnett was given individualized tests (see Vocational Psychologist's report on I.Q. testing). Due to Mr. Barnett's lock-up status, he had to be interviewed at the lock-up wing. Inasmuch as he has been classified High Violence Potential as a result of the offense for which he is charged, he had to be interviewed in handcuffs. Mr. Barnett seemed to handle these restraints quite well. The memory test indicated that he does have significant memory impairment, scoring a mental quotient which indicates he suffers from mild mental retardation. It would appear that Mr. Barnett is capable of functioning within the Goodwill Industries in an effective and gratifying way. However, he would be profoundly handicapped were he to participate in tasks which required much verbal communication or mental calculation. In addition, Mr. Barnett has a great deal of difficulty making quick, responsible decisions. It is difficult for him to assess the situation comprehensively and accurately. However, he is very motivated and eager to win approval and to try.     Mr. Barnett tends to perseverate; that is, he repeats an idea or concept in his mind. It is likely he does this in order to retain the idea. Another difficulty Mr. Barnett has is a tendency to rotate visual images. That is, it is difficult for him to remember the position of objects or figures, although he has a fair retention of shape. This may make it difficult for Mr. Barnett to maneuver successfully in his environment.

The short projective test indicated that Mr. Barnett does experience some of the psychological effects of his handicap. In addition, while adapting in many ways, he does tend to have fears and experience tension in relationship to his interacting with others. He is likely to be suggestible inasmuch as he wants to please and is easily intimidated at the same time. It would be difficult for Mr. Barnett to stand on principle in opposition to those with stronger personalities. This may be partly an issue in the offense of which Mr. Barnett has been accused at present.

SUMMARY AND RECOMMENDATIONS:    Mr. Barnett is a young man with a marked handicap in that his intellectual impairment and lack of impulse control, as well as a pattern of increasing criminal activity, has placed him in a position in which the chances for rehabilitation are becoming increasingly smaller. It is unfortunate that our placement options are so limited for people such as Mr. Barnett who, lacking sufficient value structure of their own, are easily influenced to behave in ways which are at risk to society. It is imprudent to make a probation recommendation given the impulsivity and lack of independent thinking as evidenced in Mr. Barnett. On the other hand, placing him in a prison setting in which he can continue to be influenced by those whose values are, by definition, in opposition to that of the larger society, hardly seems rehabilitative. Given that our criminal

justice system is geared toward the protection of society as opposed to the rehabilitation of the criminal, a Department of Corrections recommendation is being made. It is suggested that, if possible, Mr. Barnett is referred to a prison in which the influence of more sophisticated and criminally inclined inmates is minimal. Further, it is recommended that Mr. Barnett's probation officer's recommendations are applied to his conditions of parole. That is, a program in which he is supervised for considerable periods of time and in which employment, such as at the Goodwill Industries is encouraged and monitored.

DAIGNOSTIC IMPRESSIONS:

Axis I:    317.01 & 318.01 Mild to Moderate Mental Retardation, Criminal habits & Impulsivity as additional behavioral symptoms
312.00-10 Conduct Disorder, undersocialized (aggression factor deferred)
299.91 Pervasive Developmental Disorder, Childhood onset. Full syndrome

Axis II:   315.50 Mixed Specific Developmental Disorder: reading arithmetic, language and articulartion difficulties

Axis III:  Physical Conditions:    undiagnosed

Axis IV:   Psychosocial Stress - Severe: arrest, incarceration, solitary, prolonged ambiguity

Axis V:    Previous Adaptive Functioning - Very Poor: marked impairment in vocational and social functioning

6-24-82

J. A. Roth, Ph. D.
Staff Psychologist

This evaluation is not considered confidential.

BARNETT      C-48004-Z

RECOMMITTED AS   C-77539

NRC-CMF

7-21-82        mm        7

1-6-84         js

**NAME AND NUMBER:**  BARNETT, Dennis   C-77539 ▓▓▓▓▓▓    **CDC-128-C**

This patient has a seizure disorder and is on medication for this.  He requires continuation of his lower bunk.  This should remain in effect for one year through November 20, 2003.


KEVIN C. GERAGHTY, M.D.                    JOSEPH A. BICK, M.D.
Physician and Surgeon                      Chief Medical Officer

KCG/sj
D: 11-21-02  T: 11-22-02


Orig:  Outpatient Health Record
   cc:  Central File, Inmate, CC-II, Facility Captain, Writer


**DATE:** 11-21-02            **CMF**                    **MEDICAL**

been required of him. Now the court has ordered the respondent to answer showing cause why a writ of habeas corpus should not issue. Petitioner will not be able to file his responding papers without legal assistance and has  no funds with which to hire counsel.

Petitioner therefore request that counsel be appointed to assist him.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:, *MARCH 08, 2008*

*Dennis Ray Barnett*
DENNIS RAY BARNETT

Petitioner, pro se

Motion for Appointment of Counsel

2



LEGAL MAIL

DENNIS RAY BARNETT C-77637
CALIFORNIA MEDICAL FACILITY
P.O. BOX 2500   A1-8-1-LOWER
VACAVILLE, CA 95696-2500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
PHILLIP E. BURTON COURTHOUSE AND FEDERAL
BUILDING
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94108

CA MEDICAL FACILITY

FIRST CLASS

UNITED STATES POSTAGE
$ 07.75⁰
02 1M   25987
00 46 0004 MAR 19 2008
MAILED FROM ZIP CODE 95687